UNITED STATES of America,
Plaintiff-Appellee,

v.

Amado LOPEZ and Thomas Llerena,
Defendants-Appellants.

No. 71–3248

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 11, 1972.

Rehearing Denied June 19, 1972.

---

*  Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Martin S. Saxon, Richard M. Gale, Miami, Fla., for Lopez and Llerena.

Robert W. Rust, U. S. Atty., Harold F. Keefe, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Amado Lopez and Thomas Llerena appeal judgments of conviction entered in the United States District Court for the Southern District of Florida. We affirm.

In Count I of a three count indictment, both appellants were charged with conspiring to possess, with intent to distribute, approximately two kilograms of cocaine in violation of § 401(a) (1) of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a) (1), and with committing certain overt acts in fur-

therance of the conspiracy in violation of § 406 of the same Act, 21 U.S.C. § 846.[1] In Count II, Amado Lopez was charged with knowingly and intentionally distributing approximately two kilograms of cocaine, and in Count III with knowingly and intentionally distributing approximately 3.6 grams of heroin, both violations of § 401(a) (1) of the aforementioned Act, 21 U.S.C. § 841(a) (1).

Ample evidence supports the convictions. Lopez received a seven year sentence and five thousand dollar fine on both Count I and Count II and a three year sentence and twenty-five hundred dollar fine on Count III. Sentences imposed on Count II and Count III were to run concurrently with the sentence imposed on Count I. Llerena was sentenced to imprisonment for eighteen months on Count I.

Appellants present seven issues for review, six of which concern certain rulings of the lower court during the course of the trial. We find no merit in these contentions.

Appellants also challenge the constitutionality of § 401(a) (1) and § 406 of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a) (1) and § 846. It is argued that Congress exceeded the power granted by the Commerce Clause, Article I, § 8 of the Constitution of the United States, that is, by prohibiting and making unlawful particular activities in controlled substances without requiring both allegation and proof that the particular activity involved in each individual case has affected interstate commerce.[2] It is contended that the Act

---

1. Section 401(a) (1) of the Act, 21 U.S.C. § 841(a) (1) reads as follows:

§ 841. Prohibited acts A—Unlawful acts

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

Section 406 of the Act, 21 U.S.C. § 846 reads as follows:

§ 846. Attempt and conspiracy

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV or V of part B of Subchapter I as set forth in 21 U.S.C. § 812.

is invalid because it includes no provision for an independent inquiry in each case regarding the effect on interstate commerce of the particular activity involved.

Appellants also contend that these sections of the Act violate the Tenth Amendment of the Constitution of the United States, because, contrary to that amendment, they constitute an invasion of the state's residual police power.

The principles governing the resolution of the constitutional issues presented by this appeal have repeatedly been established.

■ The Tenth Amendment does not operate upon the valid exercise of powers delegated to Congress by the Commerce Clause. United States v. Barrow, 3 Cir., 1966, 363 F.2d 62, cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); see, also, Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945). If the passage of these sections of the Act was a valid exercise of those powers, no violation of the Tenth Amendment can occur.

It is well settled under the Commerce Clause that the power of Congress "extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make their regulation an appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce". United States v. Wrightwood Dairy Company, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942), see, also, Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L. Ed.2d 258 (1964).

■ A familiar exercise of that power is the regulation of intrastate activities which are so commingled with or related to interstate activities that all must be regulated if interstate commerce is effectively to be controlled. The fact that interstate and intrastate activities are commingled does not frustrate or restrict the power of Congress to protect and control that which is committed to its own care. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L. Ed. 609 (1941); Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939).

■ Consequently, where it is apparent that an attempt to separate interstate activities from intrastate activities would be a futile exercise substantially interfering with and obstructing the exercise of the granted power of Congress to regulate interstate commerce, that attempt is not required. White v. United States, 1 Cir., 1968, 395 F.2d 5, cert. denied, 393 U.S. 928, 89 S.Ct. 260, 21 L. Ed.2d 266 (1968); White v.' United States, 8 Cir., 1968, 399 F.2d 813.

While sometimes leaving to the courts the task of determining whether interstate commerce is affected by particular intrastate activities or whether an attempt to separate intrastate activities from those interstate would be a futile exercise, Congress, in passing this Act, has for itself made this determination.

■ The same determination was made by Congress in passing the Consumer Credit Protection Act of 1964 and the Drug Abuse Control Amendments of 1965 to the Federal Food, Drug and Cosmetic Act. There, Congress imposed sanctions upon certain classes of activities without requiring proof that the particular activity against which a sanction was imposed had an effect on interstate commerce. Congress has the power to make this determination and take this action, Perez v. United States, supra, 402 U.S. at 152, 91 S.Ct. at 1360–1361; United States v. Cerrito, 7 Cir., 1969, 413 F.2d 1270, cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970); Whalen v. United States, 8 Cir., 1968, 398 F.2d 286.

In *Perez*, for example, the Supreme Court rejected a contention, similar to the one advanced by appellants, that the Constitution required a determination on a case to case basis in prosecutions under Title II of the Consumer Credit

Protection Act, 18 U.S.C. § 891 et seq., that an extortionate credit transaction affected interstate commerce.

However, the fact that Congress has made this determination in passing the sections of the Act under which appellants have been convicted does not preclude further inquiry into the validity of this type legislation.

■ In making such an inquiry, however, a court's only function is to determine whether the certain class of activities regulated is within the reach of the federal power, i. e., that Congress had a rational basis for finding either that this certain class of activities in controlled substances has an effect on interstate commerce or that an attempt to separate intrastate activities in controlled substances from those interstate would be a futile exercise interfering with the power of Congress to regulate interstate commerce on such substances.

If it is within the reach of federal power, courts have no power "to excise, as trivial, individual instances" of the class. The contention that a court has this power in Commerce Clause cases has been put to rest. Perez v. United States, *supra*, 402 U.S. at 154, 91 S.Ct. at 1361; Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

As the basis for the exercise of its power under the Commerce Clause to regulate certain activities in controlled substances, Congress made certain findings and declarations which are set forth in § 101 of Title II of the Act, 21 U.S.C. § 801.[3] Principal among these were the findings that intrastate incidents of the traffic in controlled substances, such as manufacture, local distribution and possession, had a substantial and direct effect on interstate commerce; that such intrastate incidents of the traffic in controlled substances swelled the interstate traffic in such substances; that it was impossible to distinguish between substances manufac-

3. Section 101 of the Act, 21 U.S.C. § 801 reads as follows:

§ 801. Congressional findings and declarations

The Congress makes the following findings and declarations:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

(7) The United States is a party to the Single Convention on Narcotic Drugs, 1961, and other international conventions designed to establish effective control over international and domestic traffic in controlled substances.

tured and distributed intrastate from those manufactured and distributed interstate and, therefore, it was not feasible to distinguish between such substances in terms of controls; and that control of the intrastate incidents of traffic in controlled substances was essential to the control of interstate incidents of that traffic. Obviously, there was a rational basis for these findings because they stemmed from statistical reports and extensive testimony as to the extent of the drug traffic and the unauthorized use of drugs. Moreover, Congress had a rational basis for finding that controlled substances manufactured and distributed on an intrastate basis could not be differentiated from those manufactured and distributed on an interstate basis.

A large percentage of controlled substances, especially those held or manufactured for illicit sale, are unlabeled, thereby making a determination of their source of origin extremely difficult or impossible. The form in which they are held or consumed adds to the difficulty or impossibility of this determination.

From such a finding, Congress could reasonably assume that an attempt to separate intrastate activities in controlled substances from those which were conducted on an interstate basis would be a futile exercise substantially interfering with its power to regulate interstate commerce in these substances; a power upon which any attempt to end or alleviate the drug abuse problem would necessarily be based.

Past attempts to regulate interstate commerce in controlled substances had failed because of the difficulty or impossibility of determining the substance's source of origin. To make another attempt at controlling interstate commerce in controlled substances without regulating both intrastate and interstate activities in these substances would be ineffective.

Appellants' reliance on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) is of no help. The Supreme Court held in *Bass* that to establish a violation of 18 U.S.C. App. § 1202(a) there must be proof that the receipt, possession, or transportation of a firearm affected interstate commerce.

In our opinion, this has no effect on the constitutionality of § 401(a) (1) and § 406 of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a) (1) and § 846. These sections contain no language analogous to *Bass* which would require that the activity in controlled substances be shown to have an effect on interstate commerce. In the Act now under review Congress clearly expounded its purpose and plainly made it a federal crime simply to engage, except as authorized by the Act, in the manufacture, possession, or distribution of controlled substances. We hold that Congress acted within the power granted to it under the Commerce Clause when it enacted § 401(a) (1) and § 406 of Title II of the Act in question, 21 U.S.C. § 841(a) (1) and § 846.

The judgments of conviction against the appellants are

Affirmed.