**UNITED STATES of America**

v.

**Larry DAVIS, Appellant.**

**No. 76–1889.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1977.

Decided July 27, 1977.

Certiorari Denied Oct. 31, 1977. See 98 S.Ct. 416.

---

**68.** 16 U.S.C. § 1361 (Supp. V 1975).

**70.** Government brief at 32.

**71.** Appellants' brief at 44.

Craig P. Murphy * with whom Michael E. Geltner, New York City (appointed by this court) was on the brief, for appellant.

Steven D. Gordon, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before TAMM and MacKINNON, Circuit Judges, and OLIVER GASCH **, United States District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by GASCH, District Judge.

GASCH, District Judge.

This appeal raises three distinct challenges to appellant's conviction on a narcotics charge under 21 U.S.C. § 841(a) and his sentence to a special parole term pursuant to 21 U.S.C. § 841(b)(1)(B). For the reasons briefly set forth below, we affirm.

Appellant Larry Davis was arrested by two narcotics officers in the District of Columbia on May 20, 1976. On June 29, a grand jury returned a two-count indictment charging him with one count of possession

---

* Entered an appearance as student counsel pursuant to Rule 20 of the General Rules of this Court.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

of phenmetrazine (popularly known as "Preludin") with intent to distribute and one count of simple possession of the same substance. On August 12, appellant came before the trial judge below for a hearing on his motion to suppress thirteen phenmetrazine tablets taken from him at the time of his arrest. At the conclusion of the hearing the trial judge denied the motion based upon a finding of probable cause for the arrest and the concomitant search. One week later, the case was tried on a stipulation of facts which recapitulated the testimony presented at the earlier suppression hearing; no new evidence was introduced.[1] Appellant was found guilty of possession of phenmetrazine with intent to distribute, a violation of 21 U.S.C. § 841(a). On September 3, appellant was sentenced to five years pursuant to 18 U.S.C. § 4205(b)(2). On the next business day, September 7, the trial judge corrected the sentence by adding a mandatory special parole term of two years, as required by 21 U.S.C. § 841(b)(1)(B).

Appellant raises three issues on appeal: (1) whether there existed probable cause for his arrest and search; (2) whether the trial judge violated appellant's rights under the Double Jeopardy Clause of the Fifth Amendment when he amended the original sentence by adding the special parole term; and (3) whether 21 U.S.C. § 841(a) is constitutional as applied to phenmetrazine absent proof in each case that the particular phenmetrazine involved is related to interstate commerce.

## I. THE PROBABLE CAUSE ISSUE

Appellant argues that the arresting officers lacked probable cause for his arrest and search. The facts surrounding his arrest, as detailed at the suppression hearing and stipulated to at trial, are as follows:

▪ During the late afternoon of May 20, 1976, Officers Carl A. Occhipinti and Vance L. Beard were "staked out" in an observation post on the third floor of a vacant house in the middle of the 1100 block of "O" Street, N.W. These officers were engaged in an ongoing investigation of narcotics activity in that area and were using binoculars to make observations of the 1000 block of "O" Street. According to Officer Occhipinti, who testified at the suppression hearing, the area under observation was well known to him and to other narcotics officers as having a high concentration of narcotics activity, including the street sale of phenmetrazine, heroin and other drugs. He himself had previously made nine arrests in that area, all involving phenmetrazine.[2] It was his further testimony that the only type of phenmetrazine found on the street at that time took the form of a pink pill somewhat larger than an aspirin tablet, bearing the inscription "BI-62."

At approximately 5:00 P.M., the two officers first noticed appellant, who was standing on the north side of the 1000 block of "O" Street, approximately three-quarters of a block away. He was observed by the officers for approximately five minutes, in clear weather, from an unobstructed view. During this period, the officers observed three different men approach appellant and engage him in a brief discussion. In each instance, the conversation concluded with the stranger handing appellant what appeared to be an amount of money, which appellant would then count and place in his front pants pocket. The appellant would then remove a small manila envelope from his rear pants pocket and appear to count out a number of small objects to be given to the stranger before his departure.

Officer Occhipinti testified that the first two strangers walked away from the appellant without revealing anything further to the narcotics officers concerning the nature of the observed transactions. After the third man left the appellant, however, he passed directly underneath the observation

---

1. Appellant had waived his right to a jury trial, and the Government had dismissed the simple possession count of the indictment.

2. In his six years as a narcotics officer, Officer Occhipinti estimated he had made in excess of 400 drug-related arrests, of which approximately one in five involved phenmetrazine.

post at a distance of approximately 20–25 feet. As he did so, Officer Occhipinti testified, he momentarily unclenched his fist such that the officers were able to observe several pink pills which appeared to them to be phenmetrazine tablets. The officers then left their observation post, observed appellant entering a liquor store on the southeast corner of 11th and O Streets, noticed that he held a large quantity of money in his hand, and placed him under arrest. Officer Beard then removed from appellant's right rear pants pocket a manila envelope containing thirteen pink phenmetrazine tablets, inscribed with the marking "BI–62."

On these facts, the trial judge denied appellant's motion to suppress the phenmetrazine tablets. He found that the experience and expertise of the arresting officers, coupled with the nature of the events observed, gave rise to a probable cause belief that a crime had been committed. *See United States v. Davis*, 147 U.S.App.D.C. 400, 403–4, 458 F.2d 819, 821–22 (1972).

Appellant challenges this finding by the trial judge, contending that the events observed by the two narcotics officers, even when considered in light of their broad experience and their knowledge of that particular neighborhood as a "high narcotics area," are insufficient to constitute probable cause for arrest. He insists that the

exchanges observed by the two officers "are also susceptible to many innocent interpretations, even in the eyes of an experienced officer." [3]

We do not agree. It is true that an arrest based solely upon an officer's experience and expertise, without more, lacks probable cause. Similarly, the observation of a generally suspicious currency transaction, even in a high narcotics area, may not necessarily give rise to probable cause. But where, as here, *all* of the above elements are present in sturdy form—and particularly where a suspect is closely observed engaging in the identical suspicious activity *three* times within a five-minute span—a finding of probable cause is sound. As this Court recently stated in a similar case involving a single narcotics transaction:

> Because all innocent explanations for this exchange of a tinfoil packet for currency seem so implausible, we affirm the trial court's finding of probable cause.

*United States v. Thomas*, 179 U.S.App.D.C. 161, 162, 551 F.2d 347, 348 (1976).[4]

## II. THE DOUBLE JEOPARDY ISSUE

Appellant next challenges the trial judge's alteration of his original sentence. At first, he was sentenced to five years' imprisonment with parole eligibility to be determined in accordance with 18 U.S.C. § 4205(b)(2).[5] That sentence, however, in-

**3.** Appellant's Brief at 23. Appellant suggests that the officers should have undertaken some unspecified "further investigation" prior to making an arrest; he characterizes their failure to do so as a "classic case of police overreaction." *Id.* at 23–24.

**4.** Appellant challenges the Government's right to rely on the officers' additional observation of the small pink pills in the hand of his third visitor based upon the failure of the trial judge to make an express finding of fact concerning that observation at the time that the suppression motion was denied. He points to Rule 12(e) of the Federal Rules of Criminal Procedure, which requires that where "factual issues are involved in determining a motion, the court shall state its essential findings on the record." It is the Court's view, however, that even apart from the officers' observation of the characteristically pink phenmetrazine tablets, their other observations, as noted by the trial judge, were sufficient to give rise to probable cause. *See*

*United States v. Thomas, supra; United States v. Loundmannz*, 153 U.S.App.D.C. 301, 303–4, 472 F.2d 1376, 1378–79 (1972); *United States v. Davis, supra; DeBruhl v. United States*, 91 U.S.App.D.C. 125, 126, 199 F.2d 175, 176, *cert. denied*, 344 U.S. 868, 73 S.Ct. 111, 97 L.Ed. 673 (1952).

**5.** Section 4205(b) provides as follows:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of im-

advertently omitted a special parole term, which is required by 21 U.S.C. § 841(b)(1)(B).[6] Four days after the imposition of the original sentence,[7] the trial judge corrected the sentence originally imposed by adding a special parole term of two years.

█ It is appellant's contention that the trial judge's action violated his constitutional guarantee against double jeopardy in that it runs afoul of the general rule against increasing a defendant's sentence after he has begun to serve it. Exception should be made to this rule, he contends, only where an illegal sentence cannot be corrected through means other than by increasing it. *Cf. Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In this case, appellant's argument continues, the trial judge need not necessarily have increased his sentence to accommodate the mandatory special parole term because he could have altered the sentence to only *three* years' imprisonment with a special parole term of two additional years.

This argument was considered and rejected by this Court three years ago in *United States v. Brock*, 165 U.S.App.D.C. 291, 507 F.2d 1114 (1974). In that case, the trial judge had sentenced a person convicted under 21 U.S.C. § 841(a) to five years' imprisonment pursuant to 18 U.S.C. § 4208(a)(2), without any mention of a special parole term. Five months later, the defendant moved to have his sentence vacated, advancing the argument that the trial judge was by virtue of the Double Jeopardy Clause relegated to imposing a new sentence of a three-year special parole term (pursuant to 21 U.S.C. § 841(b)(1)(A)) and a term of imprisonment not in excess of *two* years (*i. e.*, not to exceed in total the five years originally imposed). On appeal after the trial judge refused to modify the sentence,[8] this Court noted that the defendant's unique argument had at that time been considered and rejected by three circuit courts of appeals. *See Garcia v. United States*, 492 F.2d 395, 397–98 (10th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 178, 42 L.Ed.2d 142 (1974); *Caille v. United States*, 487 F.2d 614, 616 (5th Cir. 1973); *United States v. Thomas*, 474 F.2d 1336 (2d Cir. 1973), *aff'g*, 356 F.Supp. 173, 174 (E.D.N.Y. 1972).[9] This Court at that time found those decisions and their result to be sound; nothing presented here persuades us to the contrary, nor that this case should not be controlled by *Brock*.

## III. THE CONSTITUTIONALITY OF 21 U.S.C. § 841(a)

Lastly, appellant challenges the constitutionality of 21 U.S.C. § 841(a) insofar as it prohibits the possession of phenmetrazine which is not shown to have itself moved in interstate commerce. His argument is grounded on the notion that Congress de-

---

prisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.
18 U.S.C. § 4205(b).

**6.** Section 841 provides, in pertinent part, as follows:

. . . Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 4 years in addition to such term of imprisonment.
21 U.S.C. § 841(b)(1)(B).

**7.** The sentence was corrected on the first business day after the imposition of sentence, with the Labor Day weekend intervening.

**8.** The trial judge refused any modification of Brock's sentence, claiming that he had been sentenced under 18 U.S.C. § 4208(a)(2) and not under 21 U.S.C. § 841(b)(1)(A). *See* 165 U.S. App.D.C. at 292, 507 F.2d at 1115.

**9.** Subsequent to our decision in *Brock*, appellant's argument has been rejected by four additional circuits. *See Bell v. United States*, 521 F.2d 713, 716 (4th Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *United States v. Kenyon*, 519 F.2d 1229, 1232–33 (9th Cir.), *cert. denied*, 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975); *United States v. Richardson*, 498 F.2d 9, 10 (8th Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 294 (1974); *Thompson v. United States*, 495 F.2d 1304, 1306 (1st Cir. 1974). *See also Jones v. United States*, 538 F.2d 1346, 1348 (8th Cir. 1976).

rives power under the Commerce Clause to regulate the intrastate possession of only those controlled substances which it finds to affect interstate commerce. He contends, in short, that because Congress made no such legislative finding *specific* to phenmetrazine when it enacted this statute, it lacked the power to proscribe the purely intrastate possession [10] of that particular drug.

We find this argument to be without merit. It has been raised and uniformly rejected in several other circuit courts,[11] and we see no reason why a different result should apply here. Without repeating the sound reasoning of those decisions,[12] we merely note that the Commerce Clause empowers Congress to regulate broad *classes* of activities which are found to have a substantial impact on interstate commerce. *See Perez v. United States,* 402 U.S. 146, 152–54, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Collier,* 478 F.2d 268, 273 (5th Cir. 1973); *United States v. Scales,* 464 F.2d 371, 375 (6th Cir. 1972). In the instant case, when Congress enacted Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (known as the Controlled Substances Act), it made the express finding that the local use of certain classes of drugs—one of which includes phenmetrazine [13]—"contribute[s] to swelling the interstate traffic in such substances." [14] We hold, as other courts have unanimously held

---

**10.** It should be noted that 21 U.S.C. § 841(a) prohibits the possession of a controlled substance only where accompanied by an intent to manufacture, distribute, or dispense it.

**11.** *See United States v. Atkinson,* 513 F.2d 38, 40 (4th Cir. 1975); *United States v. Esposito,* 492 F.2d 6, 10 (7th Cir. 1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974); *United States v. King,* 485 F.2d 353, 356 (10th Cir. 1973); *United States v. Richardson,* 477 F.2d 1280, 1281–82 (8th Cir.), *cert. denied,* 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973); *United States v. Rodriquez-Camacho,* 468 F.2d 1220, 1221–22 (9th Cir. 1972), *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *United States v. Scales,* 464 F.2d 371, 373–76 (6th Cir. 1972); *United States v. Lopez,* 459 F.2d 949, 950–53 (5th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972).

**12.** For example, when confronted with an identical argument made in connection with the regulation of marihuana, the Sixth Circuit in *Scales* stated:

In Section 101 of the Act, 21 U.S.C. § 801, Congress has summarized the results of its in-depth investigations into the problems of drug abuse in the United States. *See also* H.R. No. 91–1444, 91st Cong.2d Sess. (1970), set forth in 1970 U.S.Code Cong. & Adm. News, at 4572–74. Comparable to the findings upon which Congress based its 1965 amendments to the Food, Drug and Cosmetic Act, Section 101 of the present Act summarizes Congress's conclusions that illegal intrastate activities involving controlled substances substantially affect interstate commerce and that the effective control of the interstate problem requires that intrastate, as well as interstate, activities be regulated. [Compare H.R. 2, 89th Cong. 1st Sess. (1965), reported in 1965 U.S.Code Cong. & Adm. News, at 241, setting forth Congress's findings in support of the 1965 amendments to the Food, Drug and Cosmetic Act.]
. . . We therefore conclude that the class of activities regulated under Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 are clearly within Congress's powers under the Commerce Clause. Beyond this conclusion, we are powerless to further inquire whether the manufacture and possession of marihuana with which Appellant was charged in the present case was, in and of itself, related to interstate commerce. *See Perez v. United States, supra,* 402 U.S. at 154, 91 S.Ct. 1357.

*United States v. Scales, supra,* at 375–76 (footnote omitted). *See also United States v. Lopez, supra,* at 952–53.

**13.** The Act regulates, under the headings of five "Schedules," two broad classes of drugs, generally referred to as "narcotic drugs," 21 U.S.C. § 802(16), and "depressant or stimulant substances," 21 U.S.C. § 802(9). Phenmetrazine, which falls into this latter category, is denominated under the Act as a "Schedule III" controlled substance. 21 U.S.C. § 812.

**14.** The full Congressional findings and declarations are as follows:

The Congress makes the following findings and declarations:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

(3) A major portion of the traffic in controlled substances flows through interstate

before us, that such a Congressional declaration is sufficient to justify the exercise of Commerce Clause power here challenged and, furthermore, that Congress had before it ample justification upon which to include

phenmetrazine and other related drugs within the controlled substances regulated by the Act.[15]

The judgment of the District Court is affirmed.

and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

(7) The United States is a party to the Single Convention on Narcotic Drugs, 1961, and other international conventions designed to establish effective control over international and domestic traffic in controlled substances.

21 U.S.C. § 801.

**15.** Appellant's argument in effect challenges the inclusion of phenmetrazine as a controlled substance based upon his stated assertion that Congress lacked sufficient information specific to that particular drug upon which to conclude

that its abuse leads to interstate ramifications. Without judging the accuracy of that assertion, we reject the notion implicit in appellant's argument that Congress is constrained to legislate with respect to drugs on a piecemeal basis and may not proscribe the use of certain classes of drugs based upon compelling evidence before it which is pertinent to that class. Certainly, Congress' efforts to regulate in this critical area should not be hindered by a judicially-imposed requirement that it make individual findings of interstate impact for each of scores of similar regulated drugs. Its task is a difficult one at best. As the Fifth Circuit has wisely observed:

A large percentage of controlled substances, especially those held or manufactured for illicit sale, are unlabeled, thereby making a determination of their source of origin extremely difficult or impossible. The form in which they are held or consumed adds to the difficulty or impossibility of this determination.

From such a finding, Congress could reasonably assume that an attempt to separate intrastate activities in controlled substances from those which were conducted on an interstate basis would be a futile exercise substantially interfering with its power to regulate interstate commerce in these substances; a power upon which any attempt to end or alleviate the drug abuse problem would necessarily be based.

Past attempts to regulate interstate commerce in controlled substances had failed because of the difficulty or impossibility of determining the substance's source of origin. To make another attempt at controlling interstate commerce in controlled substances without regulating both intrastate and interstate activities in these substances would be ineffective.

*United States v. Lopez, supra,* at 953.