Durk PEARSON, Sandy Shaw, Julian Whitaker, Jeffrey Singer, Richard Fisher, American Preventive Medical Association, Life Extension Foundation, Plaintiffs,

v.

Barry McCAFFREY, as Director, Office of National Drug Control Policy; Donna Shalala, as Secretary, United States Department of Health and Human Services; Thomas Constantine, as Administrator, United States Drug Enforcement Administration; and Janet Reno, as Attorney General of United States, Defendants.

No. C.A. 97–0462(WBB).

United States District Court, District of Columbia.

April 19, 2001.

Jonathan Walker Emord, Emord & Associates, P.C., Washington, DC, for plaintiffs.

Jeffrey S. Markowitz, U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

## *MEMORANDUM*

BRYANT, Senior District Judge.

Before the Court is Plaintiffs' Application for a Preliminary Injunction and Defendants' Motion to Dismiss. Plaintiffs have requested that the Court enjoin Defendants from initiating civil, criminal, or administrative proceedings against: 1) Plaintiff physicians who practice medicine in states with laws allowing for the prescription and use of medicinal marijuana and who seek to recommend and prescribe medicinal marijuana to certain of their seriously and terminally ill patients; 2) Plaintiff patients who seek to obtain and use prescribed medicinal marijuana; and 3) Plaintiff scientists who seek to consult with Plaintiff physicians and patients regarding non-combustion means by which to inhale medicinal marijuana. Plaintiffs assert that at press conferences held on October 28, 1996, and December 30, 1996, Defendants announced several ways that the federal government could take adverse action against physicians who prescribe marijuana and against patients who rely on such prescriptions in those states where such prescription is legal. Plaintiffs further assert that Defendants published that policy regarding such action ("the federal policy") in the *Federal Register* on February 11, 1997.

## I. Background

Currently, in several states, physician prescription or recommendation of marijuana to terminally ill patients and terminally ill patients' use of marijuana is lawful.[1] On October 28, 1996, shortly before the passage of the medical marijuana propositions in California and Arizona, Defendant Barry McCaffrey ("Defendant McCaffrey") publicly stated that any physician recommending or prescribing marijuana would be prosecuted under federal law. On December 30, 1996, in a nationally broadcast press conference, Defendants McCaffrey, Donna Shalala, and Janet Reno announced the federal policy and described several ways that the federal government could take adverse action against physicians who prescribe marijuana and against patients who rely on prescriptions in states where such prescription is legal. On February 11, 1997, the Office of National Drug Control Policy (ONDCP) published the federal policy in the *Federal Register.*

Under the federal policy, the federal government may: 1) prosecute any physician who prescribes or recommends marijuana to patients; 2) prosecute any patient who uses prescribed marijuana; 3) revoke the DEA registration numbers of any physician who prescribes or recommends marijuana to patients; 4) exclude any physician who prescribes or recommends marijuana to patients from the Medicaid and Medicare programs; and 5) enforce all federal sanctions against physicians and patients.[2]

1. Eight states have passed medical marijuana initiatives: Alaska, Arizona, California, Colorado, Nevada, and Washington. Arizona and California voters approved medical marijuana laws in 1996. Voters in Alaska, Oregon, and Washington approved laws in 1998. Voters in Maine approved their medical marijuana initiative in 1999. Voters in Colorado and Nevada approved medical marijuana laws in 2000. District of Columbia voters approved an initiative in 1998 with 69 percent of the vote, but Congress overrode the law. The Hawaii state legislature approved a medical marijuana law in 2000. In addition, a few states, including Virginia, Connecticut, Vermont, and New Hampshire have authorized doctors to prescribe marijuana.

 When this case was filed, the parties' court documents only referenced the medical marijuana laws in four states: Arizona, California, Connecticut, and Virginia.

2. Since the time the parties filed this case, there have been a few cases in other federal courts regarding medicinal marijuana. In *Conant v. McCaffrey,* 172 F.R.D. 681 (N.D.Cal.1997), a case nearly identical to the present one, the court issued a preliminary injunction prohibiting the government from threatening or prosecuting physicians, revoking their DEA registration, or excluding them from Medicare or Medicaid based upon conduct that is not a criminal offense. Subsequently, in *Conant v. McCaffrey,* No. C–97–00139, 2000 WL 1281174 (N.D.Cal. Sept.7, 2000), the court entered a permanent injunction limiting the government's ability to revoke a physician's DEA registration if he or she recommends medical marijuana based upon a sincere medical judgment, but also found that Plaintiffs did not have standing to bring a claim regarding the exclusion of doctors from the Medicare and Medicaid programs.

 In another case, *U.S. v. Cannabis Cultivators Club,* 5 F.Supp.2d 1086 (N.D.Ca.1998), a California district court granted a motion for preliminary injunction brought by the federal government against marijuana buyers' clubs. On appeal, the Ninth Circuit remanded the case so that the court could modify the injunction to exempt certain individuals from the injunction based upon "medical necessity." *U.S. v. Oakland Cannabis Buyers' Cooperative,* 190 F.3d 1109 (9th Cir.1999). The U.S. Supreme Court heard an emergency appeal by the Federal government, and granted the request for certiorari. *U.S. v. Oakland Cannabis Buyers' Cooperative,* —— U.S. ——, 121 S.Ct. 563, 148 L.Ed.2d 483 (2000) *cert. granted.* The Supreme Court heard oral argument in that case on March 28, 2001.

 In another case, *Kuromiya v. United States,* 37 F.Supp.2d 717 (E.D.Pa.1999), the court upheld the constitutionality of the federal gov-

## II. The Parties' Requests for Relief

### A. Plaintiffs' Application for Preliminary Injunction

In their Application for Preliminary Injunction, Plaintiffs assert that the federal policy is unconstitutional for several reasons. First, Plaintiffs state that the federal policy violates patient and physician First Amendment rights because the speech at issue (prescription, recommendation, and scientific consultation) is fully protected. Therefore, Plaintiffs argue, the federal policy is an unconstitutional prior restraint, an unconstitutional content-based suppression of protected speech, and is unconstitutionally overbroad.

Second, Plaintiffs argue that the federal policy violates the Tenth Amendment because it causes all states to be "effectively coerced and cajoled into aiding federal authorities in the apprehension and prosecution of those who violate the [federal] [p]olicy." Application Prelim. Inj. at 18.

Third, Plaintiffs assert that the federal policy violates the Ninth Amendment by violating the unenumerated rights of physicians to recommend and prescribe needed treatment to a seriously or terminally ill patient, as well as the rights of patients to receive such treatment.

Fourth, Plaintiffs argue that the federal policy violates the Commerce Clause. Plaintiffs assert that because neither intrastate recommendation and prescription of marijuana, nor the cultivation, growth, or use of medicinal marijuana substantially affects the channels or instrumentality of interstate commerce, it is beyond the power of Congress or administrative agencies to regulate such activity.

Fifth, Plaintiffs argue that the federal policy violates the Administrative Procedures Act (APA) because it imposes two rules of general applicability, thus final

rules, without providing adequate notice and opportunity for public comment.

Finally, Plaintiffs argue that the federal policy exceeds ONDCP's statutory authority. The federal policy announces that physicians who prescribe or recommend marijuana under state law will have their DEA prescription drug licenses revoked and their participation in Medicare and Medicaid prohibited. Plaintiffs assert that neither the CSA nor the Social Security Act provide the Federal government with the authority to revoke licenses or participation in Medicare and Medicaid based upon a recommendation or prescription for medical marijuana in accordance with state law.

### B. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants assert several arguments. First, they state that Plaintiffs' claims are not appropriate for judicial resolution at this time because Plaintiffs lack standing and their claims are not ripe for judicial review. Defendants also note that none of the federal agency Defendants has taken any final agency action affecting the Plaintiffs. In addition, Defendants assert that the DEA has the authority to revoke a doctor's registration to dispense controlled substances for violations of the CSA.

Defendants also claim that the federal policy is fully consistent with the First Amendment, and does not violate the Ninth or Tenth Amendments. Moreover, because the federal policy is a "statement of agency policy," it is exempt from the notice and comment requirements for rulemaking under the APA. Finally, Defendants argue that Plaintiffs are not entitled to a preliminary injunction because they are not likely to succeed on the merits, and

ernment's criminal laws prohibiting marijuana in response to claims that the CSA violated

the Commerce Clause and the Ninth and Tenth Amendments.

the balance of equitable factors weighs against enjoining enforcement of the CSA, a statute Congress enacted to protect the public health and safety.

### III. Analysis

### A. Standing

In their Motion to Dismiss, Defendants argue that Plaintiffs lack standing to bring this suit because federal law does not prohibit a physician from merely discussing the risks and benefits of medical marijuana use with a patient. In addition, Defendants note that the Department of Justice (DOJ) has not threatened to bring charges against doctors or scientists for engaging in discussions about medical marijuana. Thus, Defendants argue, in the absence of a "credible and immediate" threat of prosecution, Plaintiffs do not have standing to bring this case. Defs.' Mot. Dismiss at 8.

 Plaintiffs challenging a statute or policy in federal court must demonstrate that they have or will sustain some immediate injury from the challenged statute or official conduct. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). However, "[b]ecause of the sensitive nature of constitutionally protected expression, [the Supreme Court has] not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights— might be the loser." *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Plaintiffs have noted that the federal policy, and thus, the CSA, has had a chilling effect—that doctors and researchers have been fearful of discussing the potential benefits of medical marijuana with their colleagues and patients. While these Plaintiffs have not been prosecuted by the government for such actions, their fear of potential sanctions is both credible and immediate. Therefore, this Court finds that there is enough at stake here to determine that Plaintiffs have standing to challenge the federal policy as it relates to enforcement of provisions of the CSA.

 However, as noted above, part of the federal response involves the exclusion of physicians prescribing or recommending medicinal marijuana from participation in the Medicare and Medicaid programs. In the most recent *Conant* court decision, on facts nearly identical to those in the present case, the court noted that:

> [the federal policy] stated only that the government "will send a letter" that "will outline the authority of the Inspector General for HHS to exclude specified individuals or entities from participation in the Medicare and Medicaid programs." Such a letter has never been prepared or released. The parties can only speculate as to what such a letter would contain, and what effect it would have on plaintiffs. The [federal policy] alone does not amount to a specific threat. This factor is fatal to plaintiffs' challenge of the Medicare/Medicaid policy. "Unadorned speculation" is "insufficient to invoke federal judicial power." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

*Conant v. McCaffrey*, 2000 WL 1281174, *9 (N.D.Cal.2000). Defendants do not discuss the Medicare/Medicaid issue at all in their briefs. It is therefore unclear to the Court whether Defendants intend to proceed in this area or not. Because of the lack of a credible or immediate threat of exclusion from the Medicare and Medicaid programs, Plaintiffs lack standing to bring a challenge to that portion of the federal policy.

### B. Ripeness

 Defendants also argue in their Motion to Dismiss that Plaintiffs' claims

are not ripe. Ripeness requires a court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300–301, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (*quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Plaintiffs argue that the federal policy is content based and unconstitutional. This is a purely legal question, where no future development of a factual record is necessary, and is thus fit for judicial review. *See Time Warner Entertainment Co., L.P. v. Federal Communications Commission*, 93 F.3d 957, 974 (D.C.Cir.1996). Further, Plaintiffs have provided affidavits from physicians that describe the chilling effect that the uncertainty regarding the federal policy has had on their speech, as discussed *supra*. The hardship to the Plaintiffs of withholding resolution on the merits is clear. Plaintiffs' challenge to the federal policy is ripe.

C. Statutory and Regulatory Framework

The CSA criminalizes the use, possession, or distribution of certain controlled substances and establishes five schedules of controlled substances. 21 U.S.C. §§ 801–812. Schedule I drugs have a high potential for abuse, no currently accepted medical value in the United States, and a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1). Schedule II drugs have a high potential for abuse, a currently accepted use in treatment or a currently accepted medical use with severe restrictions, and abuse of the drug may lead to severe psychological or physical dependence. 21 U.S.C.

§ 812(b)(2). Marijuana is a Schedule I controlled substance. 21 U.S.C. 812 Schedule I(c)(10).

Moreover, there are provisions in the CSA by which the Attorney General (AG) may change a designation of a controlled substance—either move it up, down, or off of the schedules. 21 U.S.C. § 811. Under these provisions, certain factors are considered, including the risk to public health of decriminalization. 21 U.S.C. § 811(b), (c). Individuals may petition the AG for rescheduling of a controlled substance. 21 C.F.R. § 1308.43 *et seq* . Plaintiffs' complaint does not challenge these provisions, nor does it suggest that Plaintiffs have petitioned the AG to reschedule marijuana.[3]

Under the CSA, the federal government also has the authority to register physicians and other manufacturers, distributors, and dispensers of controlled substances, and to revoke those registrations when certain conditions are not met, e.g., lack of compliance with the requirements of a state medical licensing board, or violations of federal drug laws. 21 U.S.C. §§ 821–824.

D. The First Amendment Issue

Plaintiffs allege that the federal policy violates the First Amendment rights of patients, physicians, and researchers because the speech at issue (prescription, recommendation, and scientific consultation) is fully protected. First, Plaintiffs argue that the federal policy is an unconstitutional prior restraint. The Supreme Court has defined such restraints as "administrative and judicial orders *forbidding*

---

**3.** This Circuit has handled extensive litigation regarding the rescheduling of marijuana. *See NORML v. Ingersoll*, 497 F.2d 654 (D.C.Cir. 1974); *NORML v. DEA*, 559 F.2d 735 (D.C.Cir.1977); *Alliance for Cannabis Therapeutics v. DEA*, 930 F.2d 936 (D.C.Cir.1991);

*Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131 (D.C.Cir.1994). In the most recent case, the Court found that DEA's decision against reclassification of marijuana was supported by substantial evidence. *See Alliance for Cannabis Therapeutics*, 15 F.3d at 1137.

certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 507 U.S. 544, 550 (1993), *quoting* M. Nimmer, *Nimmer on Freedom of Speech,* § 4.03, p. 4–14 (1984) (emphasis in original). Plaintiffs note that the federal policy does not fall within the narrow class of cases, such as those involving restraints about the disclosure of the position of military forces during wartime, that are able to overcome the constitutional presumption against prior restraints. *See, e.g., New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Therefore, Plaintiffs argue, the federal policy cannot stand.

Second, Plaintiffs assert that the federal policy is an unconstitutional content-based restriction on speech because it effectively prohibits physicians from communicating with their patients, and researchers from communicating with physicians and patients, about the benefits from use of medicinal marijuana. Citing *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), Plaintiffs note that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Id.* at 414, 109 S.Ct. 2533. Thus, plaintiffs argue, government restraints on speech such as the federal policy should survive judicial review only if they: 1) are based on a compelling state interest; and 2) are narrowly tailored, choosing the least restrictive means to further that interest. *Sable Communications, Inc. v. FCC,* 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). In the present case, Plaintiffs argue that the government does not have a compelling interest in regulating the communication among physicians, patients, and researchers about intrastate use of medicinal marijuana. Moreover, Plaintiffs assert that the federal policy is not the least restrictive means—that other options, including the limiting of interstate shipment of marijuana, would be more narrowly tailored to achieve the government's goal of prohibiting illicit interstate drug trade.

Finally, Plaintiffs argue that the federal policy is substantially overbroad and has a chilling effect on doctor-patient communication. Thus, Plaintiffs assert, there are doctors, researchers, and patients who are not before the Court, but who may benefit from prescription or recommendation of medicinal marijuana. Moreover, Plaintiffs note that there are physicians who are not before the Court who are afraid to recommend or prescribe medicinal marijuana to their patients.

In their Motion to Dismiss, as well as in oral argument at a hearing on the preliminary injunction, the Defendants have attempted to clarify their position regarding Plaintiffs' First Amendment concerns about the federal policy. During the hearing, Defendants' counsel stated,

> [t]he Federal Government has drawn a very clear line here that doctors are permitted—nothing in Federal law prevents doctors from discussing the possible risks and benefits of marijuana, but the line is that they cannot prescribe it, and they cannot recommend it to patients.

Tr. at 11. Thus, under current law, doctors, patients, and researchers may freely discuss the benefits and risks of the use of marijuana without fearing that the federal government will proceed against them with criminal, civil, or administrative penalties.

■ However, Plaintiffs also raised some question as to the meaning of the term "recommend" within the context of this discussion. Defendants note that in some states, such as California, the term "recommend" has a special significance under the law because patients are able to take a recommendation for medicinal marijuana to a buyers' club to receive the drug.

In these situations, a recommendation is analogous to a prescription, therefore, the federal government will treat it as such. Since passage of its law, the State of California has issued guidelines to provide doctors with examples of physician-patient conversations about marijuana that are permitted under federal law. Mot. Dismiss. Ex. 5. Defendants also referenced a letter from the American Medical Association stating that the medical establishment in this country understands the distinction between a "recommendation" for medicinal marijuana and mere discussion of its risks and benefits. *Id.* The Court finds that the position taken by the Defendants alleviates the First Amendment concerns raised by Plaintiffs about the ability of doctors, patients, and researchers to be able to freely discuss the risks and benefits of medicinal marijuana. It is clear that, short of a prescription or recommendation for marijuana, the federal government will not get involved in communication between doctors, patients, and researchers regarding the potential medical benefits of marijuana use.

■■■■■ However, while the Plaintiffs are free to discuss the use of medicinal marijuana, the recommendation and prescription of the drug is a different issue. During a doctor-patient conversation, physicians are engaging in the practice of medicine, which has a long history of being regulated to protect the public safety. *See, e.g., Whalen v. Roe,* 429 U.S. 589, 603 n. 30, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (stating, "[i]t is, of course, well-settled that the State has broad police powers in regulating the administration of drugs by health professionals.") As Defendants note, when a doctor's speech is part of his practice of medicine, it may be subject to "reasonable licensing and regulation." *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 884, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

■■■■■ In addition, there are no First Amendment protections for speech that is used "as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949). This Court has recognized that:

> [m]any a crime is committed purely by word of mouth, such as obtaining money by false pretenses, extortion, broadcasting treasonable utterances, and many others.... The right of freedom of speech is not defense to a prosecution for any of these offenses.

*United States v. Peace Information Ctr.,* 97 F.Supp. 255, 262 (D.D.C.1951). And, as this Circuit found in *National Org. of Women v. Operation Rescue,* 37 F.3d 646 (D.C.Cir.1994), "[t]he First Amendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose ..." *Id.* at 656, *citing United States v. Barnett,* 667 F.2d 835, 842 (9th Cir.1982).

■■■■■ Even though state law may allow for the prescription or recommendation of medicinal marijuana within its borders, to do so is still a violation of federal law under the CSA. The fact that speech or writing is the mechanism used by physicians to carry out such a task does not make the conduct less violative of federal law. The First Amendment does not prohibit the federal government from taking action against physicians whose prescription or recommendation of medicinal marijuana violates the CSA.

Moreover, in their First Amendment arguments, Plaintiffs appear to overstate the position of the federal government. It appears to the Court that, above all else, the federal policy (and the media events related to it) are little more than a very public assertion of the government's intent to continue to enforce already existing federal laws. Therefore, it is not an unconstitu-

tional prior restraint, it is a statement regarding the applicability of federal law to certain practices.

▉▉▉▉▉▉ Finally, as Defendants note, the overbreadth doctrine has been used by the courts "sparingly and only as a last resort." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The federal policy only limits certain speech by physicians that violates federal law. The doctrine is only applicable in cases where the overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *New York v. Ferber,* 458 U.S. 747, 770, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (*quoting Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908). Under this standard, the federal policy is not overbroad.

### E. The Commerce Clause Issue

▉▉▉▉ Plaintiffs allege that the federal policy, and thus, the CSA, go beyond the authority delegated to Congress to regulate interstate commerce under the Commerce Clause in Article 1, Section 8 of the United States Constitution. Plaintiffs cite *U.S. v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) as defining the limits of federal power.[4] However, in *Lopez,* the Supreme Court noted that where "*a general regulatory statute bears a substantial relation to commerce,* the *de minimus* character of individual instances arising under that statute is of no consequence." *Id.* at 1629, 115 S.Ct. 1624 (emphasis in original). The CSA clearly bears a substantial relation to commerce. In enacting the CSA, Congress found that:

[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as the *manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce*—(A) after manufacture, many controlled substances are transported in interstate commerce; (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

21 U.S.C. § 801(3) (emphasis added).

Moreover, Plaintiffs' assertion that the CSA goes beyond the authority of the Commerce Clause is in conflict with the precedent established in this Circuit. In *U.S. v. Davis,* 561 F.2d 1014, 1019 (D.C.Cir.) *cert denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977), the Court refused to entertain a challenge to the CSA on the grounds that it violated the Commerce Clause. Similarly, in *United States v. Edwards,* 98 F.3d 1364, 1369 (D.C.Cir.1996), the Court held that the CSA survived a post-*Lopez* Commerce Clause challenge, based on specific Congressional findings that 1) intrastate drug activity has a substantial effect on interstate drug activities; and 2) effective interstate drug control requires both interstate and intrastate regulation.[5]

---

**4.** In *Lopez,* the Supreme Court struck down the Gun–Free School Zones Act of 1990, which forbade any individual from knowingly possessing a firearm at a place that he or she knew to be a school zone, because it did not meet the minimum standards for exercise of federal power under the Commerce Clause.

**5.** In one case, *United States v. Hawkins,* 104 F.3d 437, 440 (D.C.Cir.1997), the Court raised a question in dictum as to whether a federal prohibition on possession without the intent to distribute would survive a post-*Lopez* challenge. However, that does not change the law applicable to this case.

## F. The Tenth Amendment Issue

■■■■■ Plaintiffs also argue that the federal policy violates the Tenth Amendment. As stated above, the federal policy is essentially a restatement of the Federal government's commitment to enforcing the CSA. Therefore, any allegation about the unconstitutionality of the federal policy is essentially an allegation regarding the CSA. As stated supra, the CSA is a valid exercise of the Commerce Clause. While the Federal government may not invade the province of that reserved to the States under the Tenth Amendment, when Federal and State law conflict, Federal law is supreme. *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 648–9, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (rejecting " 'reverse' preemption principle that would authorize states to withdraw federal remedies by establishing state remedies as exclusive").

Plaintiffs assert that the federal policy invades the territory of states—the regulation of health, safety, and the practice of medicine. However, the Supreme Court has recognized the ability of the federal government to regulate interstate traffic of drugs under the CSA. *See, e.g., Reina v. United States*, 364 U.S. 507, 511, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960) (discussing Congress' power to enact narcotics laws under the Commerce Clause and taxing power).

Finally, Plaintiffs argue that the federal policy forces state law enforcement officers to enforce federal drug laws, thus ignoring applicable state law. However, as the Defendants note, the federal policy merely encourages state enforcement officers to both execute state laws and notify and cooperate with federal DEA officials. State officials are not required to enforce federal law, and the federal government is not prohibited from asking state officials to voluntarily cooperate with their efforts. *See Printz v. United States*, 521 U.S. 898, 933, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (O'Connor, J., concurring) (discussing ability of state officials to voluntarily continue to participate in a federal program). The federal policy does not violate the Tenth Amendment.

## G. The Ninth Amendment Issue

■■■■ Plaintiffs argue that the federal policy also violates the Ninth Amendment, which states that "[t]he enumeration of the Constitution, of certain rights, shall not be construed to deny or disparage others retained." Citing various cases in which the Supreme Court has recognized certain unenumerated rights, Plaintiffs argue that there is also a Ninth Amendment right of a physician to prescribe and recommend treatment, and of a patient to receive treatment.[6] However, no court has recognized a fundamental right to sell, distribute, or use marijuana. Prescription, recommendation (in states that recognize recommendation as a quasi-prescription), and use of marijuana is illegal under the CSA. The Court declines to find that the federal policy, in upholding federal law, violates the Ninth Amendment.

## H. The Authority of the Federal Government

■■■■ Plaintiffs argue that the Office of National Drug Control Policy (ONDCP), the Department of Justice (DOJ), the Drug Enforcement Agency (DEA), and the Department of Health and Human Services (HHS) have exceeded the scope of their delegated authority by authorizing the revocation of DEA registration.

---

6. Examples cited by Plaintiffs include: the right to bear a child, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); the right to marry, *Loving v. Virginia*, 388 U.S. 535 (1942); and the right to use contraceptives, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

Defendants assert that under the CSA, DEA has the authority to suspend or revoke a physician's registration if he or she "has committed such act as would render his registration ... inconsistent with the public interest." 21 U.S.C. § 824(a). "Public interest" is defined by considering five factors, including whether a physician has complied with federal laws regarding controlled substances. *Id.* § 823(f)(4). Therefore, DEA can initiate proceedings to revoke a physician's registration because he or she violated the CSA. 21 U.S.C. § 823(f)(4).

Similarly, a physician who recommends marijuana in a state that recognizes that such an act facilitates the ability of a patient to receive marijuana is essentially writing a prescription. The same rules should apply. Both situations involve a violation of the CSA, and, thus, both situations could warrant the revocation of a physician's license.

Moreover, DEA has the authority to revoke the registrations of physicians whose conduct may threaten public health or safety. Although Plaintiffs have submitted a great deal of information chronicling the benefits from medical use of marijuana, it is still considered by the government agency that regulates it to be a Schedule I drug that, by definition, "has no currently accepted use in medical treatment in the United States," a "high potential for abuse," and a "lack of accepted safety" under "medical supervision." 21 U.S.C. § 812(b)(1). Given marijuana's status as a Schedule I drug, the government could reasonably conclude that a prescription or recommendation from a physician to use marijuana could threaten public health and safety.

I. Administrative Procedures Act Issues

 Plaintiffs argue that the Defendants violated the Administrative Procedures Act when they published the federal policy in the *Federal Register* without providing an opportunity for public comment. Plaintiffs assert that the federal policy is actually two final rules, one regarding the revocation of a physician's DEA license, and one regarding exclusion of a physician from the Medicare and Medicaid programs. Contrary to Plaintiffs' belief, the federal policy is nothing more than an affirmation of the government's intent to enforce already existing federal law, or a general statement of agency policy. Thus, under 5 U.S.C. § 553(b)(3)(A), the notice and comment procedures do not apply. As stated in *Pacific Gas & Elec. Co. v. Federal Power Comm'n,* 506 F.2d 33 (D.C.Cir. 1974):

> [a] general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

*Id.* at 38. The federal policy is advising the public of the federal government's ability and intent to enforce federal law. Therefore, it is exempt from the notice and comment procedures that are required for a rulemaking.

J. Standard for Issuing a Preliminary Injunction

 To demonstrate that he or she is entitled to a preliminary injunction, a litigant must show "1) a substantial likelihood of success on the merits, 2) that [he or she] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunc-

tion." *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C.Cir. 1998) *citing CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.Cir.1995). As the foregoing discussion illustrates, Plaintiffs have not shown that they have a substantial likelihood of success on the merits of the case. Therefore, Plaintiffs' request for a preliminary injunction is denied, and Defendants' motion to dismiss is granted.

*IV. Conclusion*

During the course of this litigation, Plaintiffs submitted a great deal of information in support of their argument. In particular, Plaintiffs included a voluminous amount of scientific materials in order to demonstrate the benefits derived from the use of medicinal marijuana. However, as the Court waded through the materials that were submitted, the true nature of this case became apparent. While the Court declines to speculate about the federal government's motivation in holding press conferences and making other public pronouncements about the federal policy, one thing is clear. As stated above, the federal policy was, in essence, a public affirmation of the federal government's intent to enforce the CSA. Moreover, in bringing this suit, Plaintiffs essentially wanted the Court to circumvent the clearly established statutory and regulatory regime that currently exists and limit the federal government's power to enforce federal law. However, even if marijuana were a panacea for all diseases, the Court does not have the authority to grant Plaintiffs' request. Plaintiffs must take the information that they have collected to the appropriate forum—to the DEA, the agency responsible for scheduling controlled substances, or Congress, the governing body that can change the criteria employed by DEA when making its scheduling decisions. After careful consideration of the motions and exhibits filed by both parties, this Court finds that Plaintiffs' Application for a Preliminary Injunction is denied, and Defendants' Motion to Dismiss is granted.

### ORDER

Upon consideration of Plaintiffs' Application for Preliminary Injunction and Defendants' Motion to Dismiss, for the reasons stated in the Memorandum filed on this date, it is hereby **ORDERED** that Plaintiffs' Application for Preliminary Injunction is DENIED and Defendants' Motion to Dismiss is GRANTED.