**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Bryant SCALES, Defendant-**
**Appellant.**

**No. 72–1032.**

United States Court of Appeals,
Sixth Circuit.

July 14, 1972.

Robert W. Andrews, Memphis, Tenn., for defendant-appellant; Sam J. Catanzaro, Jr., Memphis, Tenn., on brief.

Larry E. Parrish, Asst. U. S. Atty., for plaintiff-appellee; Thomas F. Turley, U. S. Atty., on brief.

Before CELEBREZZE and MILLER, Circuit Judges, and THOMAS,* District Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from Appellant Scales' conviction, after a jury verdict of guilty in the District Court, for the unlawful manufacture and possession with intent to distribute approximately 1000 pounds of marihuana, in violation of Section 401 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a) (1). Appellant asserts three grounds for appeal: 1) the evidence was insufficient to support the jury verdict; 2) the Government failed to establish that the marihuana was in any way related to interstate commerce so as to confer federal jurisdiction over the crime; and 3) the sentence imposed by the District Court constitutes cruel and unusual punishment.

The testimony of numerous witnesses established that in the spring of 1971 Appellant—never using his correct name—contracted for the purchase of two parcels of land of approximately 20 and 30 acres respectively, located near one another in Fayette County, Tennessee. Learning that one of the parcels was restricted under a cotton allotment, Appellant processed the necessary papers to have this allotment removed and to permit the planting of corn. Appellant further arranged to have one James Olds cultivate the parcels and plant corn thereon. Mr. Olds, however, was instructed by Appellant to leave a space in the center of each field, in which spaces Appellant said he planned to plant okra.

On one occasion while Mr. Olds was planting the corn, he observed Appellant, accompanied by another man and a child, in the area which had been set aside for okra. Appellant then indicated that the land was not in good shape for planting, and the three left.

Mr. Olds and his son returned to the parcels when the corn was knee-high, observed that the corn was in poor, neglected condition, and that no okra was growing in the center spaces, which were grass-covered. A neighbor similarly observed the poor condition of the corn and the "weeds and grass" growing in the center area of one parcel. [At trial this neighbor used the same words to describe photos of the marihuana which was seized from the center areas of Appellant's fields.]

In June 1971, agents from the Tennessee Bureau of Identification and the Bureau of Narcotics and Dangerous Drugs identified and seized approximately three acres of marihuana from the center portions of the fields, which, under a conservative estimate, amounted to 1000 pounds with a value of from $225,000 wholesale to $1,000,000 retail.

Upon his arrest, Appellant admitted the above transactions respecting the purchase of the land and the arrangements for corn to be planted, with spaces left in the center of each parcel, but he denied any knowledge of the

---

* The Honorable William K. Thomas, United States District Judge for the Northern District of Ohio, sitting by designation.

marihuana.[1] Appellant did, however, state that in order to "keep down suspicion," he had introduced a friend as his son to one of the property owners. He inquired as to who had identified him and stated that he would serve his time if he was convicted but someone would "catch hell" when he got out. Appellant further told the agents that he would plead guilty if prosecuted in a state court but would fight a federal prosecution.

With respect to Appellant's challenge to the sufficiency of the evidence, it is a well established rule that a reviewing court cannot judge the credibility of witnesses nor weigh the evidence which was before the jury; rather, the verdict must be sustained if, taking the view most favorable to the Government and all reasonable inferences which may be drawn therefrom, there is substantial evidence to support the verdict. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Luxenberg, 374 F.2d 241, 248 (6th Cir. 1967); United States v. Conti, 339 F.2d 10, 13 (6th Cir. 1964). It is also an established rule of this Court that circumstantial evidence alone can sustain a guilty verdict and that to do so, circumstantial evidence need not remove every reasonable hypothesis except that of guilt. United States v. Luxenberg, *supra,* 374 F.2d at 249; United States v. Conti, *supra,* 339 F.2d at 12–13. Applying these rules to the evidence in the present case as summarized above, we hold that there is substantial evidence to support the jury verdict.

As to Appellant's second claim, challenging the Government's failure to show that the marihuana was in any way related to interstate commerce,[2] it is clear from 21 U.S.C. § 841(a) (1) that no such relation to interstate commerce need be shown in order to sustain Appellant's conviction thereunder. That Section provides as follows:

> "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."[3]

*See also* 21 U.S.C. § 801 (Introductory Provisions, setting forth Congress's intent to regulate both interstate and intrastate activities involving controlled substances).

We therefore consider Appellant's second ground for appeal to be a challenge to the constitutionality of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 to the extent that the Act proscribes intrastate activities. To our knowledge, only one Court of Appeals has ruled upon the constitutionality of the 1970 Act as an exercise of Congress's powers under the Commerce Clause. United States v. Lopez, 459 F.2d 949 (5th Cir. May 11, 1972). This issue, however, was firmly resolved by several Courts reviewing convictions under the statutory provisions which preceded the present Act.

In its thorough and well reasoned opinion in White v. United States, 395 F.2d 5 (1st Cir. 1968), the Court of Appeals for the First Circuit ruled that the 1965 amendments to the Federal Food, Drug and Cosmetic Act of 1938 were a valid exercise of Congress's powers under the Commerce Clause. Much like the provisions presently before us, the 1965 amendments proscribed certain ac-

---

1. The record indicates that Appellant was informed of his rights prior to this post-arrest interview. No objection was made at trial respecting the agents' testimony about Appellant's oral statements.

2. Appellant relies solely upon United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), as support for this claim. It is clear from the Supreme Court's opinion in *Bass,* however, that that decision was limited to statutory construction and did not reach the Commerce Clause issue. 404 U.S. at 339 n. 4, 92 S.Ct. 515.

3. Marihuana is expressly included as a controlled substance within the terms of the above statute under 21 U.S.C. § 812 (c), Schedule I(c) (10).

tivities respecting depressant and stimulant drugs, without regard to whether those acts were interstate or intrastate in nature. Relying upon Congress's findings with respect to the interstate impact of the unlawful use of drugs, the *White* Court concluded that this problem sufficiently affected interstate commerce so as to warrant federal regulation of intrastate activities incident thereto:

"The congressional findings reveal two justifications for exercising an across-the-board prohibition. Both speak to the impossibility of the intrastate-interstate distinction as a useful concept in regulating this particular problem. One addresses the inseparability of effect on safety of drug consumption; the other, the inseparability of the problem of regulating distribution. Unlike many other objects of federal regulation, depressant and stimulant drugs are not an inert, passive substance, which, after use, pass into the realm of statistics of consumption. They exert an influence on the consumer, which may spell danger or disaster for people or property from or in other states. As for distribution, Congress has acknowledged that attempts prior to 1965 to regulate proscribed interstate traffic have failed because of the impracticability and impossibility of determining source of origin identification." 395 F.2d at 7.

The same result was reached by the Court of Appeals for the Eighth Circuit in White v. United States, 399 F.2d 813, 822–824 (8th Cir. 1968), wherein the Court concluded that Congress had a rational basis for its findings that the intrastate activities proscribed under the 1965 amendments to the Federal Food, Drug and Cosmetic Act of 1938 affected interstate commerce, and that Congress had adopted a reasonable means to control the interstate problem. Particularly applicable to the present case is the *White* Court's reliance upon the following portion of the Supreme Court's opinion in United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941):

" 'A familiar * * * exercise of power is the regulation of intrastate transactions which are so commingled with or related to interstate commerce that all must be regulated if the interstate commerce is to be effectively controlled.' " 399 F.2d at 824.

*See also* United States v. Cerrito, 413 F.2d 1270, 1271 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970); Deyo v. United States, 396 F.2d 595 (9th Cir. 1968).

Moreover, in its recent decision in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Supreme Court similarly relied upon the judgment of Congress respecting the interstate effects of intrastate extortionate credit transactions. *See* 402 U.S. at 147 n.1, 155–56. There the Court affirmed a conviction for "loan sharking" under Title II of the Consumer Credit Protection Act, 18 U.S.C. §§ 891 et seq., which in 18 U.S.C. §§ 891–94 imposes criminal sanctions on persons engaging in certain extortionate credit activities. Like 21 U.S.C. § 841 in the present case, 18 U.S.C. §§ 891–94 contain no requirement that individual incidents of the activities proscribed therein be shown to have a nexus with interstate commerce in order to sustain a conviction under the statute.

Reviewing its decisions which had construed the Commerce Clause, the Supreme Court in *Perez*, rejected the petitioner's contention that the "loan sharking" statute constitutes an impermissible exercise of Congress's powers under the Commerce Clause. The Court relied on the fact that the "class of activities" regulated under the statute, *i. e.*, extortionate credit transactions, although local in nature, has been found by Congress to have a sufficient "tie-in" with interstate commerce to warrant federal control of those activities. 402 U.S. at 155, 91 S.Ct. 1357. Upon such a determination that the regulated class of activities is within the reach of Congress's powers under the Commerce Clause, a court may not inquire whether the individual incident before it has the

necessary nexus with interstate commerce:

"Where the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class" 402 U.S. at 154, 91 S.Ct. at 1361, citing Maryland v. Wirtz, 392 U.S. 183, 193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

In view of the foregoing decisions, we believe, as did the Court of Appeals for the Fifth Circuit in its recent decision in United States v. Lopez, 459 F.2d 949 (5th Cir. May 11, 1972), that the provisions of Title II of the Comprehensive Drug Abuse Prevention and Control Act presently before us clearly constitute a permissible exercise of Congress's powers under the Commerce Clause. In Section 101 of the Act, 21 U.S.C. § 801,[4] Congress has summarized the results of its in-depth investigations into the problems of drug abuse in the United States. *See also* H.R. No. 91–1444, 91st Cong. 2d Sess. (1970), set forth in 1970 U.S.Code Cong. & Adm.News, at 4572–74. Comparable to the findings upon which Congress based its 1965 amendments to the Food, Drug and Cosmetic Act, Section 101 of the present Act summarizes Congress's conclusions that illegal intrastate activities involving controlled substances substantially affect interstate commerce and that the effective control of the interstate problem requires that intrastate, as well as interstate, activities be regulated. [Compare H.R. 2, 89th Cong. 1st Sess. (1965), reported in 1965 U.S. Code Cong. & Adm.News, at 241, setting forth Congress's findings in support of the 1965 amendments to the Food, Drug and Cosmetic Act.]

Perhaps to a greater degree than the exportionate credit transactions which were before the Supreme Court in *Perez,* the unlawful importation, manufacture, distribution, and possession of controlled substances have thus been found by Congress to have a substantial and direct effect on interstate commerce, although individual instances of these proscribed activities may be strictly intrastate in nature. We therefore conclude that the class of activities regulated under Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 are clearly within Congress's powers under the Commerce Clause. Beyond this conclusion, we are powerless to further inquire whether the manufacture and possession of marihuana with which Appellant was charged in the present case was, in and of itself, related to inter-

---

4. 21 U.S.C. § 801 provides in part:

"The Congress makes the following findings and declarations:

"(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

"(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

"(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because—

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

"(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

"(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured, and distributed interstate and controlled substances manufactured and distributed intrastate.

"(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."

state commerce. *See* Perez v. United States, *supra,* 402 U.S. at 154, 91 S.Ct. 1357.

■ We similarly find no merit in Appellant's third claim that the sentence imposed by the District Court constitutes cruel and unusual punishment. At the time of his arrest, Appellant was on parole for a 1967 conviction for the unlawful possession and transfer of marihuana. In its Amended and Superseding Judgment and Commitment, the District Court therefore sentenced Appellant to eight years in prison with a subsequent special parole term of 10 years. Appellant's sentence is entirely within the penalties prescribed under 21 U.S.C. § 841(b) (1) (B) for a person with a prior conviction for acts punishable under the Drug Control Act or other laws of the United States relating to drugs, marihuana, or depressant or stimulant substances. The penalties prescribed under Section 841 fully comply with the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense" [Weems v. United States, 217 U.S. 349, 367, 30 S. Ct. 544, 549, 54 L.Ed. 793 (1910)], and those statutory penalties in no way constitute cruel and unusual punishment.

The judgment of the District Court is therefore affirmed.