UNITED STATES of America,
Plaintiff–Appellee,

v.

Terry SAWYERS, Defendant–Appellant.

No. 89–6028.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1990.
Decided May 14, 1990.

**1218**

Terry Cushing (argued), David P. Grise, and Duane Schwartz, Asst. U.S. Attys., Office of the U.S. Atty., Louisville, Ky., for plaintiff-appellee.

Robert J. Flynn, Jr. (argued), Washington, D.C., for defendant-appellant.

Before GUY and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Defendant, Terry Sawyers, was convicted of knowingly and intentionally manufacturing 1,251 marijuana plants in violation of 21 U.S.C. § 841(a)(1). On appeal, Sawyers claims several errors were committed in the district court: (1) a continuance was denied; (2) his request for a special verdict was denied; (3) an *Allen*[1] charge given to the jury was coercive; (4) the *Allen* charge was given by a magistrate rather than the judge; (5) the prosecution under 21 U.S.C. § 841(a)(1) was improper because interstate commerce was not implicated; and (6) the trial court improperly considered the deterrent effect the sentence would have on others. Although we address these issues *seriatim*, we find no error that would require reversal.

## I.

Sawyers' marijuana crop was discovered as a result of aerial surveillance. When officers arrived on foot to investigate, they found a total of 1,251 marijuana plants, all of which were well cultivated. The plants, for the most part, were on Sawyers' property and near the trailer in which he lived. Efforts had been made to camouflage the marijuana with other growing crops such as corn.

Sawyers was on the property and met the officers when they arrived. At first, he denied knowing anything about the marijuana. The officers gave him his *Miranda*[2] rights. Sawyers stayed in the area during the next several hours as the officers confiscated and burned the marijuana. Sawyers later demonstrated to the police how the garden camouflage worked, and he knew the exact number of marijuana plants in the garden behind his dwelling. The defendant told the officers that he had known they were coming because he had heard them on his police scanner, and that he had been listening to the scanner most of the day. He stated that he had expected to sell the marijuana and to make a profit of $100,000. Police found distinctive footprints, matching those made by the shoes Sawyers was wearing, in several different locations around the various marijuana plots. The defendant also stated that he had grown marijuana in the past and that someone had stolen it. Sawyers was subsequently indicted on January 3, 1989.

## II.

Defendant sought and was denied a continuance of the trial date to locate a missing witness whom he had been unable to serve with a subpoena. The missing

---

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

witness was Ken Sawyers, defendant's cousin, whom defendant claimed was the person that actually grew the marijuana. We review issues relating to denials of requests for continuances under an abuse of discretion standard. *United States v. Gallo*, 763 F.2d 1504 (6th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986). In *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir.1986), we recently reviewed the denial of a continuance in the context of a claim that the defendant was denied his sixth amendment rights to compulsory process. In *Bennett*, we set forth a number of factors relevant to this issue:

> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Id.* at 774 (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir.1981) (quoting *United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir.1976) (footnotes omitted)).

 In this same vein, we earlier held in *United States v. Boyd*, 620 F.2d 129, 132 (6th Cir.), *cert. denied*, 449 U.S. 855, 101 S.Ct. 151, 66 L.Ed.2d 69 (1980), that "[t]o justify a continuance for the purpose of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that he was available and willing to testify." Reviewing what occurred here against the backdrop of our prior holdings, we conclude that no abuse of discretion occurred.

Right after the January 3, 1989, indictment, the district judge set March 7, 1989, as the trial date. On February 28, 1989, Sawyers requested a continuance, which was granted, and March 30, 1989, was set as the new trial date. Later, on March 24, 1989, Sawyers filed a motion to issue subpoenas at government expense for Ken Sawyers. This motion was granted. Nothing further occurred until the day of trial, at which time defendant requested a further continuance claiming that Ken Sawyers had "bolted."

On this record, we are unable to conclude that Sawyers exercised due diligence in finding a witness who he knew right from the beginning was central to his defense. Additionally, Sawyers did not show any probability that the potential witness, Ken Sawyers, would be able to testify within a reasonable time, or that Ken Sawyers was available and willing to testify. Sawyers did not even ask the trial court for any certain amount of time in which to produce Ken Sawyers but, instead, requested that the trial be continued "until such time as we can have this man subpoenaed." "[A] defendant could otherwise delay trial almost indefinitely on the speculation that some distant witness might provide favorable evidence." *United States v. Rodgers*, 755 F.2d 533, 541 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985).

We also note that the defendant was unable to indicate either whether the witness, who would have incriminated himself by testifying, would have been willing to testify, or the precise nature of what his testimony might be. Defense counsel admitted that no one knew what the witness might say. Under these circumstances, we cannot conclude that Sawyers was prejudiced by the failure to continue the trial to a later date.

## III.

 There is no merit whatsoever to Sawyers' contention that the court erred in not giving the jury a special verdict question as to the amount of marijuana being grown. Although the amount of marijuana is relevant to the punishment that may be imposed, it is not an element of the offense and is properly left to the court for consideration at the time of sentencing. *United States v. Moreno*, 899 F.2d 465 (6th Cir. 1990).

## IV.

 Defendant claims two errors were committed in giving the jury an *Allen*

charge. He first complains that it was given by a magistrate and, second, that it was coercive. We note that, with regard to both of these alleged errors, no objections were made at trial. We next observe that the charge given was basically the standard boilerplate *Allen* charge which we have previously approved. *United States v. Barnhill*, 305 F.2d 164 (6th Cir.), *cert. denied*, 371 U.S. 865, 83 S.Ct. 126, 9 L.Ed.2d 102 (1962).

In *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Supreme Court ruled that the Federal Magistrates Act, 28 U.S.C. § 636(b)(3), does not authorize a federal magistrate to preside over jury selection in felony proceedings when the defendant objects. Sawyers would have us extend *Gomez* to the magistrate giving the *Allen* charge here. We decline to do so. Unlike the defendant in *Gomez*, Sawyers did not object to the magistrate filling in for the trial judge who had presided throughout and who left only briefly due to an emergency while the jury was deliberating. The only participation by the magistrate was to read the standard *Allen* charge and to accept the verdict.[3] We conclude that the magistrate's participation here, without objection by the defendant, did not offend the holding in *Gomez.*

In a post-*Gomez* case dealing with the issue of lack of objection by a defendant to a magistrate's participation in jury selection, the Third Circuit held:

> [W]e do not read *Gomez* to prohibit delegations that are neither constitutionally prohibited nor violative of some collateral statutory provision. We find no indication in *Gomez* that the Supreme Court intended to contradict section 636(b)(3) in any such way. Quite the contrary, the Court's opinion is especially careful to underscore the fact that its decision to limit a magistrate's duties under the Act is impelled by the obvious constitutional difficulties with *forcing* a criminal defendant to accept a magistrate at voir dire....

*Government of the Virgin Islands v. Williams*, 892 F.2d 305, 310 (3rd Cir.1989). We agree with this analysis, and also note that the act of reading a charge to a jury is far different than presiding over jury selection. In the latter situation, rulings have to be made on objections, and challenges and considerable discretion must be exercised by the presiding judicial officer.[4]

We also found Sawyers' argument that the charge was coercive to be without merit. The jury began its deliberations on March 31, 1989, at 2:30 p.m. After deliberating for three hours, the jury sent out a note that it was unable to reach a verdict. Since it was already 5:53 p.m., the trial judge declared a recess until 9:30 the next morning and did not otherwise respond to the jury note. The next morning, without objection from either party, the magistrate gave the jury the *Allen* charge. Approximately two hours later, the jury returned with a guilty verdict.

Sawyers argues that the *Allen* charge was coercive, being given after only slightly over three hours of deliberations. We disagree for several reasons. First, the presiding judicial officer is in the best position to decide when to give the charge, and we leave this decision to his sound discretion. Second, this was only a one and one-half day trial, so three hours are not an insignificant amount of time for a jury to spend deliberating. Third, contrary to what defendant claims, an *Allen* charge coming relatively early is arguably less coercive than one coming after a jury has worn itself out after several days of deadlocked deliberations. An *Allen* charge probably would have its least coercive effect if given along with the rest of the instructions before the jury ever started

---

**3.** There is no question but that it was permissible for the magistrate to accept the verdict. *Gomez v. United States*, —— U.S. at ——, 109 S.Ct. at 2244.

**4.** Since we conclude that the proceedings here do not run afoul of *Gomez*, we need not consider what effect, if any, the fact that *Gomez* was decided after this jury trial would have on the outcome of this appeal. *But see United States v. Vanwort*, 887 F.2d 375 (2d Cir.1989) (In pre-*Gomez* cases, failure to object to magistrate's participation precludes relief.).

deliberating. The fact that the jury deliberated an additional two hours after the *Allen* charge also supports the conclusion that they did not feel they had been ordered to return a verdict.

## V.

Sawyers argues that because this marijuana was grown in Kentucky and there was no proof that it left the state or was intended for interstate shipment, no federal criminal jurisdiction existed. We rejected an identical contention in *United States v. Scales*, 464 F.2d 371 (6th Cir. 1972). In *Scales*, the defendant challenged his conviction under 21 U.S.C. § 841(a)(1), claiming there was no showing that the marijuana was in any way related to interstate commerce. In rejecting this argument, the *Scales* court stated: "[I]t is clear from 21 U.S.C. § 841(a)(1) that no such relation to interstate commerce need be shown in order to sustain Appellant's conviction thereunder." *Id.* at 373.

After concluding that the statute did not require an interstate nexus, the court went on to consider whether Congress had exceeded its powers under the commerce clause and concluded that it had not. After citing cases from several circuits consistent with our holding in *Scales*, we quoted as further support the rationale of the Supreme Court's decision in *United States v. Darby*, 312 U.S. 100, 121, 61 S.Ct. 451, 460–61, 85 L.Ed. 609 (1941): "A familiar ... exercise of power is the regulation of intrastate transactions which are so commingled with or related to interstate commerce that all must be regulated if the interstate commerce is to be effectively controlled." We see no basis for distinguishing Sawyers' claim from the one made in *Scales*, and find we are bound on this issue by the decision in *Scales*.

## VI.

At Sawyers' sentencing hearing, the district judge commented, *inter alia*, "I want the people down in Clinton County to know ... that drug offenders are going to be dealt with very severely." Sawyers does not appeal the district court's calculation of his sentence under the Sentencing Guidelines. Rather, he complains of being sentenced at the top of the guideline range.[5] Sawyers argues that he was made a "whipping boy" for every illegal act done in Clinton County. The judge stated he wanted to send a message to Clinton County with Sawyers' sentence. The deterrent effect a sentence will have on others is a legitimate consideration in determining a sentence. *United States v. De La Cruz*, 870 F.2d 1192, 1196 (7th Cir.1989). We find nothing illegal or improper in the action or comments of the trial judge.

AFFIRMED.

---

**5.** Since Sawyers' sentence was within the guideline range, he is actually precluded from appealing. *See* 18 U.S.C. § 3742.