947 F.2d 944
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John C. CAMEL, Petitioner-Appellant,
v.
Dewey SOWDERS, Respondent-Appellee.
 No. 90-6083.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and JOINER, Senior District Judge.*
 E.D.Ky.
 AFFIRMED.
 PER CURIAM.
 
 
 1
 This is an appeal from the denial of a petition for a writ of habeas corpus. The issue is whether an "Allen charge"[1] given by a state trial court had the effect of coercing a juror into voting for a guilty verdict. Concluding that the juror was not coerced, we shall affirm the district court's denial of the petition.
 
 
 2
 * The petitioner, John C. Camel, was tried in a Kentucky court on seven burglary charges. Approximately an hour after the jury retired to deliberate, it returned to the courtroom and reported a deadlock. The foreman volunteered that there was unanimous agreement that the defendant was guilty on one count, but that one juror refused to deliberate on the other counts. Without objection, the court gave the jury a supplemental instruction, quoted in full below, and sent it back to the jury room. Approximately two hours later the jury returned with a unanimous verdict of guilty on all counts.
 
 
 3
 Mr. Camel appealed his conviction to the Kentucky Supreme Court, but the appeal was rejected. He then filed a petition for habeas corpus in the United States District Court for the Eastern District of Kentucky. Upon denial of the petition he perfected the present appeal.
 
 II
 
 4
 The constitutionality of Allen charges is reviewed on a case-by-case basis. The constitutional issue turns on whether the charge in question was or was not "coercive." Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). Because we must look closely at what the jury was told in this case, we set out the relevant exchange in full:
 
 
 5
 "JURY FOREMAN: We have one member of the jury that does not seem to want to cooperate and discuss it and has taken the attitude that there's only one person--or--the defendant is guilty of one of the charges--
 
 
 6
 THE COURT: Well, of course, I--
 
 
 7
 JURY FOREMAN: --and from that point, there is no discussion.
 
 
 8
 THE COURT: Of course, I can't comment about you all's deliberations and your--and your purpose in it. Your deliberations--your verdicts do have to be unanimous. It's--I guess, really, at this point, I can't do anything other than reiterate the instructions that were read. There are seven different verdicts that have to be reached in the case--one on each of the counts--as to the seven different residences that were involved. The whole purpose of deliberations is to discuss the evidence that's been presented in the case. I think the law is very clear, as I've written out very carefully in those instructions. It would be at this point, if you all didn't think you could reach any further deliberations--would reach a unanimous verdict as to any of the other counts and I'm just speculating at this point--then a mistrial would have to be declared but it would have to be after you all indicated that you could not reach a unanimous verdict as to either one or all of the seven charges that the defendant was charged with in this case.
 
 
 9
 JURY FOREMAN: There would be a unanimous verdict on one of the charges.
 
 
 10
 THE COURT: Alright, sir, and you all have reached a deadlock as to the six other charges?
 
 
 11
 JURY FOREMAN: Yes, sir.
 
 
 12
 THE COURT: Is that a--a hopeless deadlock, to you think?
 
 
 13
 JURY FOREMAN: It--by the one person that was not able to discuss it, it seems to be--yes, that's true.
 
 
 14
 THE COURT: Well, do you think that any--
 
 
 15
 JURY FOREMAN: She refuses to discuss it any more at this point.
 
 
 16
 THE COURT: Do you think that any further deliberations from this point on would be of any benefit?
 
 
 17
 JURY FOREMAN: No, I do not, sir.
 
 
 18
 THE COURT: Well, as to deliberations--of course, this trial wasn't a lengthy trial to--to speak of but--for the purpose of deliberations--no juror should go back to the jury room with a blind determination that--that verdict will be his or her own opinion of the case. That's the purpose of jury deliberations is to discuss the case and he or she should not close their ears to the arguments of the other people in the jury who are equally as honest and intelligent as that one juror might be and although the verdict must be the verdict of each individual juror and not just a mere acquiescence and the group's feelings in total. Each juror should examine the questions that the other jurors have with candor and with proper regard and difference [sic] to each other's opinions and it's your duty to decide the case if you can conscientiously do so and you should listen with the disposition to be convinced by each other's arguments in the case. It's not simply a matter of just saying, 'This is it'. The purpose of deliberating is to discuss what the testimony has been and the testimony--I think--was presented in a very straightforward manner here. Do you still think that no further deliberations would have--would be in order in this case?
 
 
 19
 JURY FOREMAN: I do--I believe it would be. Just one person has stated, in fact, that she wanted to leave. She said she had made her decision and she wanted to leave.
 
 
 20
 MR. BOHANNON [representing the Commonwealth]: May we approach the bench, your Honor?
 
 
 21
 THE COURT: Yes, sir.
 
 
 22
 (Out of hearing of jury at bench.)
 
 
 23
 MR. BOHANNON: I think the Court should send them back for just a few more minutes anyway, rather than let them go right away until after they've had time to consider your statements.
 
 
 24
 THE COURT: Allright [sic], sir.
 
 
 25
 (Back in hearing of jury.)
 
 
 26
 THE COURT: Well, I'm gonna send you all back to the jury room and remind you at this time of the oath that each of you swore to when you were empaneled as jurors here and that your oath is--and your final oath when you were sworn as jurors--would that you would render a true verdict based upon the law and facts in this case. That's an oath that is just very similar to what each witness has given in this case--that is an oath to do something and it's your duty as jurors to reach that verdict unless--after carefully deliberating the facts in the case--you're unable to do so and if any one of you simply just refuses to deliberate the case at all, then that--in my mind--sends a very--or at least would point up a question of whether or not that juror is following their duty in the case. But, I'm gonna send you back to the jury room to continue deliberations in this case until such time as either a verdict is reached or it is hopelessly deadlocked--that you cannot reach a verdict based upon the law and the facts of the case and the oath that each of you swore to when you were empaneled to sit in judgment on this case. And, I'll ask that you retire back to the jury room at his time for further deliberations and we'll be in recess until the jury returns.
 
 
 27
 (Jury left courtroom.)"
 
 
 28
 In Brasfield v. United States, 272 U.S. 448, 450 (1926), the Supreme Court held that it is reversible error for a federal trial judge to give an Allen charge after having inquired as to the division of the jury. We have held that the trial court's mere knowledge of the jury's numerical split is not dispositive under Brasfield if the information was volunteered by the jury, but that it is incumbent on the court, in such a case, to instruct both sides to reconsider their positions. United States v. Lash, 937 F.2d 1077, 1086 (6th Cir.1991); see also Jones v. Norvell, 472 F.2d 1185, 1186 (6th Cir.), cert. denied, 411 U.S. 986 (1973) (identification of jury's majority-minority count evidence of unfair trial).
 
 
 29
 Lash was a direct appeal from a conviction in a federal criminal trial, and we have rejected the proposition that reversal is necessarily mandated under facts comparable to those in Brasfield when state proceedings are being reviewed pursuant to a petition for habeas corpus. Williams v. Parke, 741 F.2d 847, 851 (6th Cir.1984), cert. denied, 470 U.S. 1029 (1985). The question is whether the Allen charge was coercive in the "totality of circumstances." Id. at 852; Jones, 472 F.2d at 1186.
 
 
 30
 In United States v. Scott, 547 F.2d 334, 337 (6th Cir.1977), we noted that a trial judge should
 
 
 31
 "remind the jurors that no one of them should surrender an honest conviction about the case simply because other jurors disagreed.... The reminder that no juror should merely acquiesce in the majority opinion is therefore one of the most important parts of the Allen charge."
 
 
 32
 In the case at bar the trial judge did remind the jury that the verdict should not be a "mere acquiescence," but should represent "the group's feeling in total." The judge could have stressed this point more, as befits "one of the most important aspects of the Allen charge," but his instructions did minimally comply with Scott. The "mere acquiescence" language comes directly from the Allen decision itself, and tends to indicate that the charge was not coercive. See Hoosic v. Fedders, 916 F.2d 356, 357 (6th Cir.1990).
 
 
 33
 One of the most important circumstances in the case at bar is that the jury had not deliberated long before a deadlock was reported. An Allen charge is particularly appropriate in such a situation.
 
 As the Allen Court noted:
 
 34
 "The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself." Allen v. United States, 164 U.S. 492, 501-502 (1896).
 
 
 35
 Another circumstance to which the courts pay close attention is the length of time that elapses between the Allen charge and the verdict. See United States v. United States Gypsum Co., 438 U.S. 422, 462 (1978) (jury returning verdict soon after receiving supplemental instructions suggests the possibility of coercion); Scott, 547 F.2d at 337 (jury reaching verdict fourteen minutes after Allen charge after deliberating previously for over eight hours suggests coercion); Jones, 472 F.2d at 1185-1186 (jury verdict five minutes after Allen charge constitutes evidence of unfair trial).
 
 
 36
 In the case at bar the jury was out for only one hour before the Allen charge, but it deliberated for approximately two hours after the charge was given. A two-hour interval was deemed significant in United States v. Sawyers, 902 F.2d 1217, 1221 (6th Cir.1990), cert. denied, 111 S.Ct. 2895 (1991), where we said that the "fact that the jury deliberated an additional two hours after the Allen charge also supports the conclusion that they did not feel they had been ordered to return a verdict".
 
 
 37
 The purpose of an Allen charge is not to coerce the jury to return a verdict, but to assure that each juror fulfills his obligation to listen to his fellow jurors with an open mind. That seems to have been the purpose served here, and the lack of any contemporaneous objection suggests that the petitioner's lawyer recognized this at the time.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 So named after a supplemental instruction given in Allen v. United States, 164 U.S. 492 (1896), after the jury had reported a deadlock