50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Santiago CANTU (93-3238/3344); Mike Cantu (93-3348);
Uhrico Cadena (93-3364), Defendants-Appellants.
 Nos. 93-3238, 93-3344, 93-3348 and 93-3364.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1995.
 
 Before: KENNEDY, RYAN and NORRIS; Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Defendants-appellants, Uhrico Cadena, Santiago Cantu, and Mike Cantu, appeal their convictions and sentences for conspiring to distribute drugs. After a lengthy investigation by several law enforcement agencies, a federal grand jury indicted defendants (among others) on charges stemming from their alleged involvement in a marijuana distribution conspiracy. A jury found Uhrico Cadena guilty of conspiracy to possess and distribute marijuana in violation of 21 U.S.C. Sec. 846, possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1), unlawful use of a communication facility in violation of 21 U.S.C. Sec. 843(b), and interstate travel in aid of racketeering in violation of 18 U.S.C. Sec. 1952. The jury convicted Santiago Cantu and Mike Cantu of conspiracy to possess and distribute marijuana, unlawful use of a communication facility, and interstate travel in aid of racketeering. Defendants raise various challenges to their convictions and sentences. For the reasons that follow, we affirm their convictions but vacate their sentences and remand for resentencing.
 
 I. Cadena's Suppression Motion
 
 2
 Cadena contends that the district court erred by denying his motion to suppress a gun and eighteen pounds of marijuana that police seized from his car during a traffic stop. The facts relevant to this claim are not disputed. At approximately midnight on December 19, 1990, Panola County, Texas Sheriff's Deputy Paul Beatty stopped Cadena's car for traffic infractions. The rural Texas highway on which the stop occurred is commonly used for the transportation of drugs. Cadena produced his driver's license and told Deputy Beatty that he was en route to a party in Ohio. When asked, Cadena told Deputy Beatty that he had a loaded pistol in the glove compartment; Deputy Beatty retrieved the gun.[1] Cadena presented a plastic identification card purporting to identify him as a Texas peace officer; he explained that he did not have a badge because he was no longer employed as a police officer. Upon presenting the identification card, Cadena's tone shifted from evasive and nervous to assertive and "cocky." Cadena failed to produce registration papers or proof of insurance.
 
 
 3
 While Deputy Beatty conversed with Cadena, a man--later identified as Glen Flores--remained or pretended to remain asleep under a blanket in the car's back seat. Deputy Beatty eventually roused Flores. His answers to Deputy Beatty's questions conflicted with the answers Cadena had given.
 
 
 4
 Based upon his observations, Deputy Beatty suspected that Cadena and Flores were, in his words, "up to something" and therefore radioed for a dog trained to detect narcotics. Upon its arrival, the dog immediately indicated that the car's trunk contained drugs. Deputy Beatty opened the trunk and discovered approximately eighteen pounds of marijuana. According to Deputy Beatty's suppression hearing testimony, the entire roadside encounter lasted thirty-one minutes.
 
 
 5
 Cadena moved to suppress the marijuana and the gun. He contended that his roadside detention violated the Fourth Amendment and that the evidence seized during that detention should therefore be suppressed. After holding a hearing, the district court denied the motion. Cadena argues that the district court erred in its assessment of the legality of the roadside detention. We review de novo a district court's legal determination regarding the constitutionality of a police seizure of a person. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993).
 
 
 6
 The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. The stopping of a vehicle and the detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). Since Deputy Beatty clearly seized Cadena and thereby triggered the protection of the Fourth Amendment, we must decide whether Cadena's detention was reasonable.
 
 
 7
 Traditionally, all police seizures of individuals were considered arrests and satisfied the Fourth Amendment only if they were supported by probable cause.[2] See Michigan v. Summers, 452 U.S. 692, 697 (1981). The Supreme Court, however, in Terry v. Ohio, 392 U.S. 1 (1968), created a narrow exception to the probable cause requirement. After Terry, an officer may make a brief and limited seizure of a person if the officer has a reasonable and articulable suspicion that the person to be seized has committed or is committing a crime. Id. at 19-21; Reid v. Georgia, 448 U.S. 438, 440 (1980).
 
 
 8
 The Supreme Court has, since deciding Terry, described the types of circumstances that justify a police seizure founded on less than probable cause and has imposed limits on the permissible scope of a so-called "Terry stop." We apply the standards established in Terry and its progeny to assess the reasonableness of the detention of motorists who have been stopped for violating traffic laws. See Pennsylvania v. Mimms, 434 U.S. 106, 108-11 (1977) (per curiam); United States v. Shabazz, 993 F.2d 431, 435 (5th Cir.1993). To pass muster as a limited Terry stop, the detention must be justified at its inception, and its scope must be reasonably related to the circumstances that justified it. Terry, 392 U.S. at 19-20; Garza, 10 F.3d at 1245.
 
 
 9
 Our first inquiry is whether the stop was justified at its inception, i.e., whether Deputy Beatty had the type and degree of suspicion required to justify a Terry stop. For a brief investigatory detention to be valid, the officer must have an objectively reasonable suspicion that the person to be seized has committed or is committing a crime. Florida v. Royer, 460 U.S. 491, 498 (1983). An officer's suspicion is reasonable only if it is based upon specific facts and observations. United States v. Cortez, 449 U.S. 411, 417-18 (1981). The Terry Court summarized, "the facts available to the officer ... [must be such that they] would 'warrant the man of reasonable caution in the belief' that the action taken was appropriate." Terry, 392 U.S. at 21-22 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).
 
 
 10
 Cadena does not argue that Deputy Beatty lacked reasonable suspicion to stop the car. Deputy Beatty witnessed several traffic violations, and the stop was therefore justified at its inception. But, absent reasonable suspicion that the driver is committing or has committed a crime, a police officer may not extend a traffic stop beyond the scope necessary to achieve the original purpose of the stop. United States v. Soto, 988 F.2d 1548, 1554 (10th Cir.1993); Cf. United States v. French, 974 F.2d 687, 692 (6th Cir.1992) (holding that marijuana odor emanating from automobile supplied officer with reasonable suspicion that justified extending the detention of the driver), cert. denied, 113 S.Ct. 1012 (1993). Accordingly, our inquiry focuses upon whether it was reasonable for Beatty to extend the investigatory detention long enough to obtain a dog trained to detect narcotics.
 
 
 11
 Deputy Beatty, a well-trained and experienced law enforcement officer, testified that Cadena's suspicious conduct and the surrounding circumstances led him to summon the dog. A review of his testimony leads us to conclude that he harbored a reasonable suspicion that Cadena was transporting narcotics. Deputy Beatty articulated a number of factors that gave rise to his suspicion. The Texas highway on which the stop occurred was a pipeline for drugs entering and exiting Austin, Texas. When Deputy Beatty inquired as to Cadena's destination, Cadena responded implausibly that he was en route to an unspecified location in Ohio for a party. Cadena was unusually evasive and hesitant in answering Deputy Beatty's questions and conspicuously avoided eye contact with Deputy Beatty. According to Deputy Beatty, Cadena's reluctance was more pronounced than that which might be expected from an unhappy motorist receiving a traffic citation. Further, a companion, Flores, was asleep in the car's back seat; Deputy Beatty knew that such an arrangement is commonly employed by drug couriers who typically travel in pairs and alternate shifts of driving and sleeping. Flores' responses to Deputy Beatty's inquiries greatly differed from the responses given by Cadena. In fact, Cadena and Flores even differed as to how long they were going to stay in Ohio. Further arousing suspicion was the loaded handgun Deputy Beatty recovered from the car's glove compartment. Deputy Beatty also reported that Cadena displayed a Texas peace officer identification card of dubious validity; whereas Cadena had initially been evasive, he became "cocky" after displaying the card.
 
 
 12
 Deputy Beatty's observations, in our view, provide an articulable basis supporting a reasonable suspicion that Cadena was transporting drugs. We therefore conclude that the government has demonstrated that the stop did not exceed the permissible scope of a brief Terry -type investigatory detention. Accordingly, we affirm the district court's denial of Cadena's motion to suppress the evidence seized from his car.
 
 II. Sufficiency of the Evidence
 
 13
 Defendants argue that the prosecution failed to present evidence sufficient to support their convictions. In addressing such claims, we ask whether, in view of all the evidence presented at trial and any reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. United States v. Sims, 975 F.2d 1225, 1239 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993).
 
 A. Conspiracy
 
 14
 Santiago Cantu and Mike Cantu argue that the evidence presented at trial was insufficient to support their conspiracy convictions. To convict a person for conspiracy to possess and distribute drugs, the prosecution must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991).
 
 
 15
 Santiago Cantu contends that the prosecution failed to present evidence that he knew of and participated in the conspiracy. The prosecution, however, presented the testimony of his codefendants and recordings of phone conversations between Santiago Cantu and his codefendants in which they discussed drug transactions. Mike Cantu contends that the prosecution failed to adduce "hard" evidence linking him to the conspiracy. The prosecution presented the testimony of a coconspirator that implicated Mike Cantu, evidence that police seized $68,000 from Mike Cantu, and recordings of phone conversations in which Mike Cantu and his codefendants discussed drug transactions. As this small sample of the evidence makes clear, a rational juror certainly could have concluded that each element of the conspiracy offense had been established beyond a reasonable doubt. The sufficiency of the evidence claims are without merit.
 
 B. Interstate Travel in aid of Racketeering
 
 16
 The jury found Cadena guilty of the charge that he had, on March 3, 1990, and on December 9, 1990, travelled in interstate commerce in aid of a criminal enterprise. To convict a person of interstate travel in aid of racketeering, the prosecution must establish that at or about the time alleged, the defendant travelled in interstate commerce, that the defendant travelled with the intent to commit an unlawful act, and that the defendant attempted or committed act. 18 U.S.C. Sec. 1952; United States v. Schultz, 855 F.2d 1217, 1222 (6th Cir.1988).
 
 
 17
 Cadena argues that the prosecution failed to introduce evidence indicating that he travelled in interstate commerce on the dates charged and, with respect to the December 9, 1990 charge, failed to establish that any such interstate travel was undertaken with the intent to violate drug laws.
 
 
 18
 The government highlights the prosecution's evidence relating to the March 3, 1990 count. On March 3, 1990, police officers stopped Cadena, a resident of Texas, and Mike Cantu, who was accompanying Cadena, in the Toledo, Ohio airport. The officers seized $68,000 from Mike Cantu and detained Cadena until a dog trained to detect narcotics was brought to his car. The dog alerted both on the seized currency and on Cadena's car. Among the items police found in Cadena's car were marijuana seeds and receipts from a Louisiana hotel dated February 28, 1990.
 
 
 19
 With respect to the December 9, 1990 charge, the government points out that, on December 6, 1990, a Toledo police officer observed Cadena enter and then leave Santiago Cantu's Toledo hotel room. Toledo police subsequently stopped Cadena as he was driving in his car. A dog trained to detect narcotics indicated that Cadena's trunk contained narcotics. Police found marijuana in a gym bag in his trunk.
 
 
 20
 The evidence would permit a rational juror to infer that on or about the dates in question, Cadena travelled to Ohio from another state or to another state from Ohio. Furthermore, in light of the fact that police seized drugs from Cadena on those occasions, a rational juror could have inferred that he travelled with the intent to violate drug laws. We conclude that, when viewing all the evidence in the light most favorable to the government, the prosecution presented evidence sufficient to support Cadena's interstate travel in aid of racketeering convictions.
 
 III. Joinder
 
 21
 Mike Cantu claims that the district court erred when it joined his case with the case against several of his alleged coconspirators who had been indicted seven months before he was indicted. He argues that the joinder was improper because it left him with a total of three months to prepare for trial, while his codefendants had a total of ten months in which to prepare.
 
 
 22
 We review decisions regarding the consolidation of charges and defendants for abuse of discretion. United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). Mike Cantu points to no reason why three months was an insufficient time in which to prepare a defense. In view of this fact, the district court's order that he be tried with those indicted earlier was not an abuse of discretion.
 
 IV. Racially-Motivated Peremptory Challenges
 
 23
 All three defendants allege that the prosecution illegally used its peremptory juror challenges by intentionally excluding a venireman for racial reasons. Defendants allege that the prosecution excluded the venireman at issue, a caucasian man, because he is married to a hispanic woman. They argue that the prosecution's strike of this venireman violated the rule established in Batson v. Kentucky, 476 U.S. 79, 85-87 (1986), that a prosecutor violates the Equal Protection Clause if he excludes potential jurors solely because of their race. To make a prima facie showing of a Batson violation, a defendant must show that he is a member of a cognizable racial group, that peremptory challenges have been used against members of that group, and that the facts raise the inference that the prosecutor intended to exclude one or more veniremen because of their race. Batson, 476 U.S. at 96; United States v. Ferguson, 23 F.3d 135, 141 (6th Cir.), cert. denied, 115 S.Ct. 259 (1994).
 
 
 24
 We know of no cases that purport to abandon the requirement that, in order to offend the Batson rule, the challenged strike be made because of the venireman's race as opposed to, for example, the race of one of the venireman's relatives. Here, defendants do not allege that the prosecution excluded the venireman at issue because of his race.[3] Defendants have therefore failed to make a prima facie showing of a Batson violation.
 
 V. Sentencing Issues
 
 25
 Defendants raise several arguments regarding the sentences imposed by the district court. The court considered defendants' objections to their presentence reports, made findings of fact, then sentenced defendants. To establish defendants' base offense levels, the court made factual conclusions regarding the amount of marijuana for which each defendant could be held accountable. The court concluded that Cadena and Mike Cantu could reasonably have foreseen that the conspiracy was selling at least 1,000 kilograms, but not more than 3,000 kilograms, of marijuana. The court concluded that Santiago Cantu could be held accountable for 3,000 to 10,000 kilograms of marijuana. The court sentenced Mike Cantu to 121 months' imprisonment. After enhancing his base offense level for obstruction of justice, the district court sentenced Santiago Cantu to 300 months' imprisonment. After enhancing his base offense level for possession of a firearm during a drug offense and for acting as a supervisor in the conspiracy, the district court sentenced Cadena to 210 months' imprisonment.
 
 A. Jury Trial Right
 
 26
 Mike Cantu contends that the district court violated his right to due process and his right to a jury trial by determining the amount of marijuana involved in the conspiracy rather than delegating the matter to the jury. This argument is meritless. The amount of marijuana involved is not an element of the conspiracy offense; it is relevant only to the punishment to be imposed and is thus a matter for the court rather than the jury. United States v. Sawyers, 902 F.2d 1217, 1219 (6th Cir.1990), cert. denied, 501 U.S. 1253 (1991). Nor is there merit to Mike Cantu's argument that the district court erred by requiring the prosecution to satisfy only the preponderance of the evidence standard regarding the quantity of drugs involved. For sentencing purposes, the government need only prove the quantity of drugs involved by a preponderance of the evidence. Sims, 975 F.2d at 1242.
 
 B. Marijuana Amounts
 
 27
 Defendants contend that the sentencing court erred in its determination of the amount of marijuana that they could have reasonably foreseen being sold through the conspiracy. We review a district court's conclusion regarding the quantity of drugs for which a defendant may be held accountable under the clearly erroneous standard. United States v. Jenkins, 4 F.3d 1338, 1345-46 (6th Cir.1993), cert. denied, 114 S.Ct. 1547 (1994).
 
 
 28
 We are unable to perform our review in this case because the district court neglected to express the factual underpinnings for its conclusion regarding the amount of marijuana for which each defendant could be held accountable. The district court stated conclusions on this issue without stating findings of fact upon which those conclusions rest.
 
 
 29
 The absence of express findings of fact is particularly problematic with respect to Mike Cantu. The sentencing court stated that it excluded from its calculation 2000 kilograms of marijuana to which Mike Cantu alluded during plea negotiations. That being so, an entirely plausible interpretation of the district court's statements at the sentencing hearing is that, after subtracting amounts that could not be properly considered, Mike Cantu could only be held accountable for 650 kilograms of marijuana.
 
 
 30
 The record contains ample evidence from which we could make factual determinations upon which we might well reach the conclusions that the district court reached. Without express findings of fact, however, we cannot determine that the district court did not clearly err in reaching its conclusions. Accordingly, while we express no view on the correctness of the district court's conclusions, we remand for further findings regarding the specific amounts of marijuana that the district court considered in reaching its conclusions regarding the amount for which each defendant could be held accountable.
 
 C. Obstruction of Justice
 
 31
 Santiago Cantu contends that the district court erred by enhancing his sentence, pursuant to Sentencing Guideline Sec. 3C1.1, for obstruction of justice. The district court based its decision upon its conclusion that Santiago Cantu committed perjury during his trial. We review such a factual conclusion for clear error. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990). In the face of physical evidence to the contrary, Santiago Cantu, at trial, professed total ignorance of the drug scheme; he also offered implausible explanations for the intercepted phone conversations in which he discussed drugs. The sentencing court did not clearly err by concluding that Santiago Cantu perjured himself. The argument that the perjury finding is infirm since the sentencing judge did not preside over the trial and thus did not observe Santiago Cantu's demeanor is meritless when, as here, the untruths in one's testimony are apparent from a reading of the transcript. We therefore reject Santiago Cantu's argument that the district court erred by enhancing his sentence for obstruction of justice.
 
 D. Supervisory Role
 
 32
 The district court, pursuant to Sentencing Guideline Sec. 3B1.1(b), enhanced Cadena's base offense level upon finding that he played a supervisory or managerial role in a conspiracy involving five or more people. Cadena argues that the evidence failed to prove that he was a supervisor in the conspiracy and claims that he was, in fact, only a "glorified mule." As noted, we review the district court's factual conclusions for clear error. Moreno, 899 F.2d at 470.
 
 
 33
 The trial evidence indicated that Cadena had his own "people" and "clientele," that he commonly supplied large amounts of drugs to others, that several people were arrested while working for him, and that Cadena--rather than the other conspirators--took charge when police confronted participants in the operation. Based upon the record, we cannot say that the district court committed clear error when it determined that Cadena was a manager or supervisor in the conspiracy.
 
 E. Firearm Possession
 
 34
 Pursuant to Sentencing Guideline Sec. 2D1.1(b)(1), the district court also enhanced Cadena's sentence upon finding that he possessed a firearm during a drug-trafficking offense. Although Cadena does not challenge the factual finding that he simultaneously possessed both marijuana and a loaded gun, he argues that the enhancement was not appropriate because the jury acquitted him of the charge that he possessed a firearm in relation to a drug-trafficking offense in violation of 18 U.S.C. Sec. 924(c). Cadena fails to recognize that, whereas the prosecution must prove the elements of a crime beyond a reasonable doubt, the facts supporting a sentence enhancement need only be proven by a preponderance of the evidence. Thus, a district court may enhance a defendant's sentence for possession of a firearm despite the fact that the jury acquitted the defendant on the Sec. 924(c) charge. United States v. Moreno, 933 F.2d 362, 374 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). We therefore reject Cadena's contention and affirm the enhancement of his sentence for possession of a firearm during a drug-trafficking offense.
 
 VI.
 
 35
 We affirm the convictions of each defendant. We remand so that the district court may resentence defendants in accordance with this opinion.
 
 
 
 [1]
 When Cadena told Deputy Beatty that he had a gun, Cadena explained that he was traveling. Texas law provides a defense to the crime of carrying a handgun if the person in possession of the handgun is traveling. Tex.Penal Code Ann. Sec. 46.03(a)(3) (West 1994). The fact that Cadena's possession of the gun may have been lawful has little bearing on our resolution of his claim
 
 
 [2]
 Probable cause exists when the officer has reasonably trustworthy information of facts and circumstances that are "sufficient to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed.' " Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925))
 
 
 [3]
 Indeed, in view of the fact that the prosecution did not strike the only hispanic member of the venire, the facts do not raise the inference that the strike was made because of the race of the venireman's wife