NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0304n.06

Case No. 20-5957

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 30, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| JARVIS ROOSEVELT SISSON, | ) ) | |
| Defendant-Appellant. | ) ) ) | |

BEFORE: SILER, MOORE, and THAPAR, Circuit Judges.

THAPAR, J., delivered the opinion of the court in which SILER, J., joined. MOORE, J. (pp. 4–5), delivered a separate opinion concurring in the judgment.

THAPAR, Circuit Judge. Police officers spotted Jarvis Sisson quickly enter and leave a house in a high-crime area. When Sisson left the house, he had bulges in his pant pockets that hadn't been there before. So an officer approached him to talk. But instead of talking, Sisson fled on his bike. While fleeing from the police, Sisson twice threw items from his pockets or waistband. And where the items landed, officers recovered baggies of meth and over $4,000 in cash.

The police then searched the house that Sisson had previously entered. They discovered a pound of methamphetamine, some heroin, scales, two guns, ammunition, and a cutting agent called methylsulfonylmethane (also called MSM). The same cutting agent was found in the methamphetamine that Sisson discarded.

A federal grand jury indicted Sisson. It charged him with (1) conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, and (2) possession with intent to distribute five grams or more of methamphetamine.

The grand jury also indicted Kevin Evans as an alleged co-conspirator. Evans lived in the house where the pound of methamphetamine was discovered and had tried to escape through the back door when police arrived.

The case went to trial, and Sisson and Evans were tried jointly. The jury began deliberating at 5:00 p.m. on a Friday evening. Neither defendant objected to the jury beginning deliberations at that time.

At 8:31 p.m., the jury sent a note to the judge. The note said, "We cannot reach a unanimous decision for either defendant." R. 132, Pg. ID 1808. The judge met with counsel and told them she was contemplating giving the jury the Sixth Circuit's pattern *Allen* charge. An *Allen* charge instructs the jury to continue deliberating, stresses the importance of unanimity, and encourages jurors to conscientiously consider their fellow jurors' views. *See Allen v. United States*, 164 U.S. 492 (1896); Robert E. Larsen, *Navigating the Federal Trial* § 2:73 (2020 ed.).

The judge also told counsel that she was going to give the jurors the option of returning on Monday if they would prefer. But—perhaps sensing the possibility of an acquittal—Evans' attorney asked the judge not to do so. He explained, "[W]e just don't like the idea of the jurors going home. We really don't. They talk to their families, they get—subject to outside influences, they can easily hear from other people, they can talk about it with other people. . . . [I]t's not so much I want a verdict tonight, but I don't want them to go home for two days." R. 132, Pg. ID 1815–16. He also asked that the judge wait to give the *Allen* charge. Sisson's attorney said he shared "all the same concerns." *Id.* at 1819.

Since the jury was deadlocked, the judge determined that an *Allen* charge was appropriate. But the judge agreed with the defendants that at that point she should not offer the jury the opportunity to leave for the weekend. The judge also told the jurors not to "rush" and said they should take "as much time as you need to discuss things." *Id.* at 1822.

At 11:45 p.m., the jury returned its verdict. The jury acquitted Evans of all counts, acquitted Sisson of the conspiracy count, and convicted Sisson of possessing with intent to distribute between five and fifty grams of methamphetamine. Sisson now appeals.

Sisson raises a single argument: The district court unconstitutionally coerced the jury by giving an *Allen* charge at 8:30 p.m. on a Friday evening. But district courts have broad discretion to determine when an *Allen* charge is appropriate. After all, they are present in the courtroom and know when the best time is to give a charge. *United States v. Sawyers*, 902 F.2d 1217, 1220 (6th Cir. 1990). And it is often better to give the charge early on—when a judge knows the jury is deadlocked—rather than waiting until the jury is worn out. *Id.*

That is exactly what happened here. Once the jury told the district court judge that they were having trouble reaching a unanimous verdict, she gave the *Allen* charge. And the fact that the jury deliberated for several hours after the *Allen* charge was read "supports the conclusion that they did not feel they had been ordered to return a verdict." *Id.* at 1221.

Sisson argues that reading an *Allen* charge at 8:30 p.m. on a Friday evening is inherently coercive. But he cites no law for this proposition. Why? Because the time of day is irrelevant. Deadlock can occur at eight in the morning or eight in the evening. The state of the deliberations, not the clock, is what matters.

We affirm.

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the judgment. I write separately to underscore that the timing of an *Allen* charge is a relevant consideration in our determination of whether a trial court's use of an *Allen* charge coerced the jury into reaching a verdict.

"In determining whether or not an instruction is 'coercive,' a reviewing court must consider the totality of circumstances surrounding the instruction and evaluate it in context." *United States v. Markey*, 693 F.2d 594, 597 (6th Cir. 1982). Although no court has held that an *Allen* charge given late in the evening is per se coercive, courts have expressed strong concerns that an instruction to a jury to continue deliberating when the hour is late may, in certain circumstances, be coercive. *See United States v. Parks*, 411 F.2d 1171, 1173 (1st Cir. 1969) ("[W]e do frown upon the practice of keeping the jury at work until the small hours of the morning particularly when it reports that it is tired."); *United States v. Tubbs*, 461 F.2d 43, 48 (7th Cir. 1972) (Kiley, J., concurring) ("[T]rial judges take the risk of committing reversible error where, except in the extraordinary case, deliberations are continued after midnight, with the probability that jurors, because of fatigue, agree to a verdict which they would otherwise not have agreed to."); *United States v. Murvine*, 743 F.2d 511, 515 (7th Cir. 1984) (recognizing that jurors deliberating late on a Friday night "may be eager to reach a verdict and go home," but "declin[ing] to hold, without clear indications that the jury was exhausted, hungry, confused, or otherwise uncomfortable, that deliberations begun on a Friday night are incapable of producing a fair verdict").

Here the district court issued the Sixth Circuit's Pattern Instruction for an *Allen* charge and did not suggest that the jury was required to agree or to reach a verdict by a certain time. Nor was there any indication that the jurors were fatigued, hungry, or unwilling to continue deliberating. Under these circumstances, the late hour at which the district court issued the *Allen* charge does

not create an inference that the *Allen* charge coerced one or more of the jurors into surrendering "conscientious views to arrive at the verdict." *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691, 697 (7th Cir. 1977). Thus, the district court did not abuse its discretion by delivering the *Allen* charge at 8:30 p.m. on a Friday night and allowing the jury to continue deliberating. *See United States v. Mitchell*, 104 F. App'x 544, 549 (6th Cir. 2004) (holding that the district court did not coerce the jury into reaching a verdict despite asking the jury to continue deliberations late at night when "[t]here was no indication by the jury that they were tired or unwilling to continue"); *see also Gibson v. United States*, 271 F.3d 247, 259 n.7 (6th Cir. 2001) (holding that a trial court acts within its discretion when it allows a jury to deliberate late in the evening when there is no evidence of jury fatigue), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). However, I reiterate the shared concern of our sibling circuits: trial judges risk converting thoughtful deliberation into coerced judgment when they allow a jury to deliberate late into the night and fatigue overcomes jurors' conscientious convictions.